# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re*: Application of TECNOLOGIAS RELACIONADAS CON ENERGIA Y SERVICIOS ESPECIALIZADOS, S.A. DE C.V. ("TRESE"), and<br><br>GRUPO EMPRESARIAL ANACAR, S.A. de C.V. ("ANACAR"),<br><br>Applicants, for an Order Pursuant to : 28 U.S.C. § 1782 to Conduct Discovery : for Use in Foreign Proceedings | Case No. 1:25-mc-00435 |

## UNITED OVERSEAS BANK NEW YORK AGENCY'S OPPOSITION TO EX PARTE APPLICATION UNDER 28 U.S.C. § 1782, OR ALTERNATIVELY, TO QUASH OR LIMIT THE SUBPOENA

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 5

    I.   UOB NY Lacks Possession, Custody, or Control of the Requested Materials .......... 5

    II.  Comity Bars Using UOB NY To End-Run Singapore's Bank-Secrecy Law .............. 8

    III. The Request for Corporate-Structure Discovery Is Not "For Use" in Mexico .......... 9

    IV. Rule 45 Requires Narrow Nonparty Protection ........................................................ 10

CONCLUSION ..................................................................................................................... 10

**PRELIMINARY STATEMENT**

This is not a case about United Overseas Bank New York Agency ("UOB NY"). Petitioners' dispute concerns alleged Trust and Facility Agreements executed in Singapore between Coastal and United Overseas Bank Limited ("UOB Singapore"). Yet rather than seek discovery through Singaporean channels, Petitioners have served an overbroad § 1782 subpoena on UOB NY—a nonparty agency office with no involvement in, or access to, the head-office records at issue.

The record is undisputed: the Trust and Facility Agreements name only UOB Singapore officers, list Singapore addresses, and bear no connection whatsoever to the United States. As confirmed by UOB's Head of the North America Region, the New York agency has never seen these documents, has no knowledge of the alleged trust, and maintains no related records. Petitioners' own filings make clear that they seek to "better understand" UOB's internal organization and to use the New York branch as a conduit to reach materials located in Singapore—precisely the sort of investigative lead-gathering that § 1782 does not allow.

Petitioners' application fails on every level. UOB NY does not possess or control the requested materials. Comity forbids compelling a U.S. branch to violate Singapore's criminal bank-secrecy regime. And the sweeping "corporate-structure" discovery Petitioners demand cannot be "for use" in any Mexican proceeding. Even if discovery were theoretically available, Rule 45 requires the Court to shield non-parties from the undue burden of expansive, foreign-directed subpoenas. The application should be denied in its entirety, or at minimum substantially narrowed with protective conditions.

1

On October 1, 2025, Petitioners moved ex parte under 28 U.S.C. § 1782 for discovery directed to The Bank of New York Mellon, Alvarez & Marsal, and United Overseas Bank New York Agency ("UOB NY"). Dkt. 1. Petitioners assert that "UOB Singapore"—*not* "UOB NY"—and Coastal entered into Trust and Facility Agreements, that "UOB [Singapore] did not fulfill [its] obligations to the Trust," and that "UOB [Singapore] has benefited for years by receiving transfers directed by Coastal of tens of millions of dollars of funds." *Id.* at 10.[1] *Nowhere* do Petitioners allege that *UOB NY* itself participated in, facilitated, or was even aware of those contractual agreements or events.

Instead, the application asks this Court to approve service of a subpoena to UOB NY demanding two categories of discovery: (i) testimony from a Rule 30(b)(6) witness "most knowledgeable" about UOB's global corporate structure and UOB's role under the Trust; and (ii) "all documents and communications" concerning UOB's role under the Trust. Dkt. 1-2 at 20. Petitioners contend this discovery would help them "better understand the events that led to Coastal's seizure of control of the Trust" and "the flow of the misappropriated funds at issue in the foreign proceedings." Dkt. 1 at 10.

To demonstrate that UOB NY possesses this information, Petitioners attach a Trust Agreement dated September 11, 2015. Dkt. 5-1. That document identifies the Primary Beneficiary as "United Overseas Bank Limited" in Singapore, lists Singapore

---

[1] Petitioners' application defines "United Overseas Bank Singapore" as "UOB." *See* Dkt. 4 at 2-3.

addresses, and names three Singapore-based UOB officers as contacts. *Id*. at 47. As attested by Bert de Guzman, UOB NY's Head of North America Region, ***UOB NY has never seen the Trust Agreement and has no knowledge of it***. De Guzman Decl. at ¶4.

Petitioners also attach a "Facility Agreement" dated September 25, 2015, between Coastal, UOB Singapore, and a Malaysian bank. Dkt. 5-4. That agreement was executed entirely in Singapore by UOB Singapore employees and signed by UOB entities located there. *Id.* at 119–127. UOB NY has also never previously seen this document. De Guzman Decl. ¶4. Likewise, Petitioners include a May 2015 letter from Coastal addressed to UOB's Board Chairman, Wong Kan Seng, at UOB's Singapore headquarters. Dkt. 5-11. The letter requests "collaboration" from "United Overseas Bank of Singapore ('UOB')," and—tellingly—makes no mention of UOB NY. *Id.* at 12.

Public regulatory filings corroborate that UOB NY is not a repository of head-office trust or credit materials. UOB's most recent (and public) Federal Reserve and FDIC resolution-plan disclosure confirms that "UOB's U.S. Entities do not comprise a 'core business line' of UOB, and UOB's U.S. Entities do not engage in any activities or provide any services that are significant to any of those core business lines conducted outside the United States." *See* Coppola Decl. Ex. A (United Overseas Bank Ltd., Public Section of U.S. Resolution Plan 5–6 (2025)) at 3.

To confirm its limited role—and its lack of access over the requested documents—UOB NY conducted a good-faith search of its own records for the categories identified in the proposed subpoena. De Guzman Decl. at ¶5. That search yielded no documents concerning the Trust, the Facility Agreement, the Trust

Agreement, UOB's role under the Trust, or any trust-related transfers. *Id.* To the extent such materials exist, they would be held by UOB Singapore. *Id.* at ¶6. No UOB NY employee is "most knowledgeable" about UOB's global corporate structure or about the Trust; New York personnel are familiar only with U.S. agency operations and possess no information about the alleged flows of funds described in Petitioners' filings. *Id.* at ¶7.

De Guzman's Declaration further confirms that UOB NY lacks any knowledge of the circumstances surrounding Coastal's alleged assumption of control of the Trust, whether any default occurred, what events—if any—triggered such default, or whether any UOB–Coastal credit agreement (which UOB NY has never seen) required UOB to take specific measures. *Id.* at ¶8.

The record thus shows that Petitioners have directed their expansive demands at the wrong New York target, while their own filings point unmistakably to Singapore as the only plausible source of the information they seek.

## LEGAL STANDARD

Section 1782 "authorizes, but does not require," a district court to assist with discovery for use in a proceeding in a foreign or international tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Among other requirements, the petitioner must show both that the respondent actually possesses or controls the requested documents and that the materials are intended "for use" in the foreign proceeding. *See, e.g., Application of Passport Special Opportunities Master Fund, LP for an Order Compelling Compliance with a Subpoena Issued to Deloitte Touche Tohmatsu Ltd.*

4

*Pursuant to 28 U.S.C. § 1782*, 2016 WL 844833 (S.D.N.Y. Mar. 1, 2016) (holding that discovery cannot compel a U.S. entity to produce materials held by foreign affiliates outside its possession, custody, or control); *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *2 (S.D.N.Y. June 13, 2018) (holding that discovery into global corporate structure and management relationships was not "for use" because it served investigative, not evidentiary, purposes).

Moreover, a district court must consider several discretionary factors, including whether the § 1782(a) request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and whether "the requested discovery is unduly intrusive or burdensome." *In re BonSens.org*, 95 F.4th 75, 80 (2d Cir. 2024).

## ARGUMENT

### I.     UOB NY Lacks Possession, Custody, or Control of the Requested Materials

Under § 1782, Petitioners bear the burden of showing that the respondent possesses, has custody of, or controls the documents sought; discovery cannot compel a New York office to retrieve head-office files beyond its reach. As courts in this district have repeatedly held, "where discovery is sought from an entity for documents in the physical possession of another, affiliated entity, *[i]t is the discovering party's burden to demonstrate that the requested entity has either the legal right or the practical ability to obtain the documents in question from their custodian*." *Application of Passport Special Opportunities Master Fund*, 2016 WL 844833, at *4 (emphasis added) (internal citations omitted); *see also, e.g., Aguila Energia e Participcoes Ltda. v. JPMorgan Chase & Co.*, 2024

WL 3373416, at *2 (S.D.N.Y. July 10, 2024), *aff'd sub nom.*, 2025 WL 1661987 (2d Cir. June 12, 2025) ("Because Aguila has failed to meet its burden of establishing that JP Morgan Chase has possession, custody, or control of the documents it seeks, Aguila's Section 1782 motion is denied, the motion to quash the subpoena is granted."); *In re FourWorld Event Opportunities Fund, L.P.*, 2023 WL 3375140, at *3 (S.D.N.Y. May 11, 2023) ("Because Respondent does not have possession, custody, or control of the discovery in question, the Court must grant its motion to quash.").

The limitation on discovery to materials within a respondent's possession, custody, or control applies equally in the parent–subsidiary context. *See, e.g., In re Mun*, 2022 WL 17718815, at *2 (S.D.N.Y. Dec. 15, 2022) (denying § 1782 application "[b]ecause JPMorgan Chase's subsidiary controls and possesses the documents and not JPMorgan Chase itself . . ."); *In re FourWorld Event Opportunities Fund, L.P.*, 2023 WL 3375140, at *2 (S.D.N.Y. May 11, 2023) (denying § 1782 application because "Petitioner has not satisfied its burden of showing that the discovery it seeks is within Respondent's possession, custody, or control. A corporate parent's mere ownership of a subsidiary is not a dispositive factor in the inquiry, but rather one factor among several."); *In re Liverpool Ltd. P'ship*, 2021 WL 5605044, at *3 (S.D.N.Y. Nov. 24, 2021) (denying § 1782 application because documents were held by Japanese subsidiary and no parent-level "control" was shown.").

The subpoena at issue—demanding a corporate-structure deposition "most knowledgeable" about UOB's global operations and "all documents and communications" concerning UOB's role under the Trust (Dkt. 1-2 at 20)—does not

satisfy that standard. As the record shows, UOB NY is a small agency office with no involvement in, or access to, the materials Petitioners seek. The Trust Agreement identifies United Overseas Bank Limited (Singapore) as the Primary Beneficiary, lists only Singapore addresses, and names Singapore-based officers. Dkt. 5-1 at 47. Petitioners likewise rely on a Facility Agreement dated September 25, 2015, between Coastal, UOB Singapore, and a Malaysian bank—executed entirely in Singapore by UOB Singapore employees and signed by UOB entities located there (Dkt. 5-4 at 119–127)—as well as a May 2015 letter from Coastal addressed to UOB's Board Chairman, Wong Kan Seng, at UOB's Singapore headquarters, requesting "collaboration" from "United Overseas Bank of Singapore ('UOB')" without any mention of UOB NY. Dkt. 5-11 at 12. As confirmed by UOB's Head of the North America Region, UOB NY has never seen any of these documents, has no knowledge of the alleged trust, and maintains no related records. De Guzman Decl. ¶ 4.

Public regulatory filings likewise show that UOB's U.S. entities "do not comprise a 'core business line' . . . and do not engage in any activities or provide any services that are significant to any of those core business lines conducted outside the United States." Coppola Decl. Ex. A at 3. After a good-faith search, UOB NY found no trust- or credit-related materials, and any responsive records "would be held by UOB Singapore." De Guzman Decl. at ¶5–6.

On this record, Petitioners have not met their burden to show control, and the subpoena cannot compel UOB NY to produce what it does not possess or control.

7

## II.     Comity Bars Using UOB NY To End-Run Singapore's Bank-Secrecy Law

Petitioners' objective is to use UOB NY as a work-around to reach Singapore head-office materials and internal decision-making. But Singapore law is explicit. Section 47(1) of the Banking Act 1970 (2020 Rev. Ed.) provides that "Customer information ***must not***, in any way, be disclosed by a bank in Singapore or any of its officers to any other person except as expressly provided in this Act." (emphasis added). Section 40A,  in turn, defines "customer information" to include "any information relating to, or any particulars of, an account of a customer of the bank," which plainly encompasses the data Petitioners seek. Section 47(6) provides that  breach of section 47(1) is a criminal offense punishable by "a fine not exceeding $125,000 or imprisonment for a term not exceeding 3 years or both." The statute contains no exception for compulsion by a foreign court order.

Courts in this District have repeatedly refused to let § 1782 circumvent foreign confidentiality regimes, warning that U.S. courts should not "aid litigants in circumventing the judicial systems of foreign countries." *In re OOO Promnefstroy*, 2009 WL 3335608, at *10 (S.D.N.Y. Oct. 15, 2009). Courts have even applied that principle to Singapore's regime specifically. For example, in *In re Commodity Exchange, Inc., Gold Futures & Options Trading Litigation*, 2019 WL 1988525, at 3-4 (S.D.N.Y. May 6, 2019), the court, in analyzing Singapore's secrecy regime, held that disclosure of customer information originating from Singapore "would violate the Singapore Banking Act." *Id.* at 3. Finding that Singapore's law bars disclosure of information held by Singaporean branches absent customer consent or a Singapore court order, the court concluded that

only a narrow subset of data previously transferred out of Singapore could potentially be produced. *Id.*

Compelling UOB NY to produce records protected by Singapore's criminal bank-secrecy laws would pit U.S. process against Singapore's statutory regime—an unnecessary conflict that undermines comity. Section 1782 is not a license to violate foreign law; the application should be denied.

### III. The Request for Corporate-Structure Discovery Is Not "For Use" in Mexico

Petitioners seek to depose a witness "most knowledgeable" about UOB's global corporate structure—including North American operations—and to obtain "all documents and communications" concerning UOB's role under the Trust. Dkt. 1-2 at 20. That demand is investigative lead-gathering, not evidence to be placed before the Mexican court, and courts in this District have rejected materially identical requests as not "for use" under § 1782.

For example, in *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *2 (S.D.N.Y. June 13, 2018), the petitioner sought discovery into the global network's "managerial relationship" and its "common standard, strategy, and methodology," arguing that understanding the organization's structure would assist the foreign tribunal. The court held that such discovery was not "for use" because it would not aid the Lebanese court in deciding the issues before it and instead amounted to "a fishing expedition" designed for investigative purposes rather than evidentiary use. *Id.* at 3-4.

Petitioners' own brief confirms that is precisely their plan for UOB NY—to "better understand" the bank's organization and to obtain evidence "from UOB or other

entities." Dkt. 4 at 10. That stated purpose is not to present proof to the Mexican court but to spur further discovery elsewhere—exactly the kind of investigatory detour that falls outside § 1782's limited evidentiary scope.

### IV.     Rule 45 Requires Narrow Nonparty Protection

Even if the Court were inclined to permit limited discovery (it should not), Rule 45 imposes an independent obligation to protect non-parties like UOB NY from undue burden or expense. *See* Fed. R. Civ. P. 45(d)(1), (3)(A)(iv). Petitioners' sweeping subpoena—which demands global organizational information and head-office records located abroad—violates that standard on its face. Courts applying § 1782 routinely enforce Rule 45's safeguards to ensure that discovery sought from peripheral U.S. offices does not become a vehicle for worldwide corporate fishing.

Accordingly, if the Court does not deny the application outright, it should at minimum: (i) substitute a short custodian-of-records declaration confirming the results of UOB NY's reasonable search in place of any deposition; (ii) prohibit any requirement that UOB NY obtain or produce Singapore head-office materials; (iii) limit any production to discrete, U.S.-based records maintained by UOB NY, if any exist; and (iv) enter a protective order restricting use to the identified Mexican proceedings and preserving cost-shifting should Petitioners later expand their demands.

### CONCLUSION

UOB New York Agency has no involvement in the alleged trust, no responsive records, and no authority over Singapore-held materials. Petitioners' demands violate § 1782's limits, conflict with Singapore's banking laws, and impose undue burden on a

non-party. The application should be denied in full, or, at most, limited to the narrowest scope the Court deems appropriate under § 1782 and Rule 45.

**HAYNES AND BOONE, LLP**

Dated: New York, New York
November 14, 2025

*/s/ Lauren J. Coppola*

By:     Lauren J. Coppola
Lauren.Coppola@HaynesBoone.com
Eric Lindenfeld
Eric.Lindenfeld@HaynesBoone.com
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 659-7300

*Attorneys for United Overseas Bank New York Agency*

11