UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

*In re:* Application of

TECHNOLOGIAS RELACIONADAS CON
ENERGIA Y SERVISIOS
ESPECIALIZADOS, S.A., DE C.V.,                    No. 25 – MC – 0435 (JHR) (RFT)
("TRESE"), *et al.*

Applicants for an Order Pursuant to
28 U.S.C. § 1782 to Conduct Discovery
For Use in Foreign Proceedings.

———————————————————————x

---

**MEMORANDUM OF LAW IN OPPOSITION TO APPLICANTS' REQUEST
FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS**

---

Daniel S. Alter
BROADFIELD US LLP
540 Madison Avenue
New York, NY 10022
(212) 390-1256
danielalter@broadfieldlaw.com

*Attorneys for Respondent Alvarez & Marsal
Holdings, LLC*

November 28, 2025

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................. 5

**FACTUAL BACKGROUND** ..................................................................................... 6

    A.    Corporate Structures of A&M Holdings and A&M Mexico.................................. 6

    B.    A&M Mexico's Administration and Liquidation of CIBanco. .............................. 7

    C.    The Application....................................................................................................... 8

**ARGUMENT** ............................................................................................................. 9

    A.    Legal Framework .................................................................................................... 9

    B.    The Application Should be Denied Because TRESE Fails to Show that
A&M Holdings is in 'Custody or Control' of the Information Sought................ 12

    C.    The Application Should be Denied Because Three of the Four
*Intel* Factors Weigh Heavily Against Granting TRESE Discovery....................... 16

    1.    The first *Intel* factor weighs against granting discovery. ...................................... 16

    *2.*    The third *Intel* factor weighs against granting discovery. .................................... 19

    3.    The fourth *Intel* factor weighs against granting discovery. .................................. 24

    **CONCLUSION** ........................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agerbrink v. Model Serv. LLC,*
  2017 WL 933095 (S.D.N.Y. March 8, 2017)..................................................................24

*Aguila Energia E Participacoes Ltda. v. JPMorgan Chase & Co.,* 2024 WL
  3650347, *8 (S.D.N.Y. Feb. 29, 2024) (listing cases), *R&R adopted* 2024
  WL 3373416 (S.D.N.Y. July 10, 2024), *aff'd* 2025 WL 1661987 (2d Cir.
  June 12, 2025) .......................................................................................... 12, 13

*In re Application for an Order Permitting Metallgesellschaft AG to Take*
  *Discovery,* 121 F.3d 77 (2d Cir. 1997)....................................................................12

*In re Application of Palladian Partners, L.P.,*
  2025 WL 2814719 (S.D.N.Y. Oct. 3, 2025).........................................................19, 24, 25

*In re Application of Passport Special Opps. Master Fund, LP,*
  2016 WL 844833 (S.D.N.Y. March 1, 2016)...................................................................12

*In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. and Logistic*
  *Solution Int'l to Take Discovery of Chadborne & Parke LLP,*
  60 F. Supp.3d 419 (S.D.N.Y. 2014)..................................................................10, 23

*In re Asia Maritime Pacific Ltd.,*
  253 F. Supp.3d 701 (S.D.N.Y. 2015)..................................................................26

*Banoka S. à.r.l. v. Elliot Management Corp.,*
  148 F.4th 54 (2d Cir. 2025) ................................................................................ *passim*

*In re Boustany,*
  2024 WL 473569 (S.D.N.Y. Feb. 7, 2024)........................................................13, 14, 15, 16

*Correios v. Bank of New York Mellon Corp.,*
  2022 WL 4955312 (S.D.N.Y. Oct. 4, 2022).............................................................17, 24

*In re Escallon,*
  323 F. Supp.3d 552 (S.D.N.Y. 2018).....................................................................23

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F.3d 1095 (2d Cir. 1995) .........................................................................9, 16, 20

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.,*
27 F.4th 136 (2d Cir. 2022) ...................................................................................10, 19

*In re FourWorld Event Opportunities Fund LP*,
2023 WL 3375140 (S.D.N.Y. May 11, 2023) .......................................................13, 15, 16

*Frasers Grp. PLC v. Stanley*,
95 F.4th 54 (2d Cir. 2024) ...................................................................................17, 19

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004)................................................................................... *passim*

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,*
895 F.3d 238 (2d Cir. 2018), *cert. denied* 586 U.S. 1076 (2019).....................................11, 17

*In re Liverpool Ltd. P'ship*,
2021 WL 5645044 (S.D.N.Y. Nov. 24, 2021) ...........................................................15

*Mangouras v. Squire Patton Boggs*,
980 F.3d 88 (2d Cir. 2020) ...................................................................................10, 11

*Mees v. Butler*,
793 F.3d 291 (2d Cir. 2015) ..................................................................................10, 24

*Particpacoes Ltda. v. JPMorgan Chase & Co.,*
2024 WL 3650347 (S.D.N.Y. Feb. 29, 2024), *R&R adopted* 2024 WL
3373416 (S.D.N.Y. July 10, 2024), *aff'd* 2025 WL 1661987 (2d Cir. June 12,
2025). ....................................................................................................................13

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP,*
376 F.3d 79 (2d Cir. 2004) ....................................................................................17

**Statutes**

28 U.S.C. § 1782 ....................................................................................... *passim*

Federal Rules of Civil Procedure Rule 26 ...................................................................12, 24

Mexican Credit Institutions Law Article 142 ......................................................20, 21, 22, 23

**PRELIMINARY STATEMENT**

Respondent Alvarez & Marsal Holdings, LLC ("A&M Holdings"), a U.S. holding company headquartered in New York City, respectfully submits this memorandum of law in opposition to the application by Technologoias Relacionadas con Energia y Servicios Especializados, S.S. de C.V. and Grupo Empresarial Anacar, S.A. de C.V. (collectively, "TRESE"), which, pursuant to 28 U.S.C. § 1782 ("§ 1782"), seeks documents and deposition testimony from A&M Holdings (the "Application"). TRESE maintains that the discovery sought is for use in Mexican bankruptcy and related appellate proceedings ("Mexican Litigation").

The Application is hopelessly deficient. Any information that TRESE demands would exist with Alvarez & Marsal Mexico SC ("A&M Mexico"), a separate Mexican subsidiary of A&M Holdings. A&M Mexico, which is in Mexico City, supposedly possesses information of interest to TRESE solely by virtue of serving as the Mexican government's appointed administrator and liquidator of a defunct Mexican bank. A&M Holdings has no role in that engagement, however, and has not participated in any services provided by its foreign affiliate.

TRESE is undeterred. Without even showing that A&M Holdings has custody or control of the demanded materials, TRESE has brazenly launched an international fishing expedition that is unmanageably broad and burdensome in scope. Equally troubling, by invoking § 1782, TRESE has plainly set a course to circumvent strict confidentiality

provisions under Mexican law that greatly limit a litigant's access to Mexican banking information.

Section 1782 serves the important goal of fostering cooperation and comity among international legal tribunals. But Congress did not enact the statue to tangle U.S. courts in meritless fact-gathering disputes involving foreign litigations, especially at the risk of offending the sovereignty of other nations. Because granting the Application would inevitably result in that unwelcome outcome, the Court should deny it.

## FACTUAL BACKGROUND

TRESE's factual recitation gets lost in the substantive and procedural bramble of the Mexican Litigation, much of which is completely irrelevant to the Application insofar as it relates to A&M Holdings. *See* Memorandum in Support of *Ex Parte* Application ("TRESE Br.") at 2-8, 10. The pertinent facts regarding A&M Holdings are simple and straightforward.

A. Corporate Structures of A&M Holdings and A&M Mexico

A&M Holdings is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York. *See* Declaration of Daniel Feigenbaum, dated November 25, 2025 ("Feigenbaum Dec."), ¶ 4; Declaration of Sergio Meneses, dated November 25, 2025 ("Meneses Dec."), ¶ 3.

A&M Mexico is a Mexican entity that is organized under Mexican law and has its principal place of business in Mexico City, Mexico. *See* Feigenbaum Dec., ¶ 2; Meneses Dec., ¶ 3. It has no offices in the United States. *See* Feigenbaum Dec., ¶ 2.

A&M Mexico is a subsidiary of Alvarez & Marsal Mexico Holdings, LLC ("A&M Mexican Holdings") and Alvarez & Marsal Latin America, LLC ("A&M Latin America"). *See* Feigenbaum Dec., ¶ 3. A&M Latin America is wholly owned by A&M Holdings. *See id.*, ¶ 4. A&M Mexico Holdings is 99.5% owned by A&M Holdings. *See id.*, ¶ 5. A&M Mexico and A&M Holdings are distinct legal entities. *See* Meneses Dec., ¶ 2.

B. A&M Mexico's Administration and Liquidation of CIBanco.

A&M Mexico is a consulting firm that assists organizations in resolving operational, financial, and regulatory challenges and, where necessary, provides turnaround management solutions, *i.e.,* ways in which to resuscitate or terminate failing businesses. *See* Meneses Dec., ¶ 4.

On June 25, 2025, the United States Treasury severely sanctioned the Mexican Bank CIBanco S.A., Institucion de Banka Multiple ("CIBanco"). The U.S. Government charged CIBanco in connection with extensive money laundering activities performed by Mexican criminal drug cartels. *See* Meneses Dec., ¶ 5.

On June 26, 2025, Mexico's National Banking and Services Commission ("CNBV") placed CIBanco into provisional administration to ensure the safety of customer deposits, maintain the bank's financial stability, and implement regulatory compliance measures. By operation of Mexican law, the Institute for the Protection of Bank Savings ("IPAB") became CIBanco's provisional administrator. In that role, IPAB was charged with overseeing all CIBanco's continuing operations and legally assumed the full authority of CIBanco's chief executive officer and board of directors to meet those obligations. *See* Meneses Dec., ¶ 6.

That same day, IPAB engaged A&M Mexico to perform the duties of the provisional administrator. Those duties included controlling all pending and new litigation that was brough by or against CIBanco. *See* Meneses Dec., ¶ 7. Then, on October 10, 2025, CIBanco's shareholders formally requested CNBV to revoke CIBanco's Mexican banking license, requiring the bank's full liquidation. IPAB was also legally required to conduct the bank's liquidation and continued A&M Mexico's engagement to do so on the agency's behalf. *See id.*, ¶ 8.

A&M Holdings has never provided services to IPAB or CIBanco. A&M Mexico has been solely responsible for performing the CIBanco engagement. Consequently, A&M Mexico personnel have not substantively communicated with A&M Holdings' staff regarding the CIBanco engagement. Nor are there documents or people with substantive knowledge regarding the CIBanco engagement in New York. *See* Meneses Dec., ¶¶ 9-10; Feigenbaum Dec., ¶6.

C. The Application

A&M Holdings received a copy of the Application on November 3, 2025. *See* Dkt. Doc. No. 14. Pursuant to § 1782, TRESE, a party to the Mexican Litigation, sought documents and witness testimony from *A&M Holdings* regarding CIBanco's administration of a commercial trust at the heart of those foreign proceedings. *See* TRESE Br. at 8-9. To that end, TRESE staked its request for § 1782 discovery from *A&M Holdings* on the mere fact that A&M Holdings is a corporate "affiliate" of A&M Mexico (CIBanco's government-appointed administrator) and the related speculation that A&M Holdings

8

must be "well positioned to have knowledge concerning CIBanco's unlawful actions at issue" in the Mexican Litigation. TRESE Br. at 8-9.

Trying to avail itself of A&M Holdings' presumed vicarious knowledge, TRESE has demanded *all* documents and communications in A&M Holdings' "possession, custody, or control relating to the role played by CIBanco in connection with" the commercial trust at issue in the Mexican Litigation or *any* of a multiplicity of parties "arising from or relating to" that trust. *See Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings ("TRESE *Ex Parte* Application"). *See* Dkt. Doc. No. 1, Exh. B at 3. The Application also seeks testimony from an A&M Holdings representative with the most knowledge regarding: (1) "the role played by CIBanco in connection with" that commercial trust or the same multiplicity of parties "arising from or relating to" that trust; and (2) the documents produced to TRESE by A&M Holdings. *Id.*

## ARGUMENT
### THE APPLICATION SHOULD BE DENIED

A. Legal Framework

Upon application of an "interested party," a district court "*may* order" a person or entity located within the district to produce documents or give testimony to be used in a foreign or international tribunal. 28 U.S.C. § 1782(a) (emphasis added). The statute has a two-fold purpose. Its "twin aims" include "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa*

*S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995) (internal quotation marks omitted). Indeed, courts must thoroughly "evaluate discovery requests under section 1782 in light of" both those salutary goals. *Id.*

To invoke the court's assistance," applicants must meet several statutory requirements," namely that: (1) the person from whom the discovery is sought resides (or is found) in the district in which the application is made; (2) the discovery is for use in proceedings abroad before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or any interest person. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).[1] But the complete analysis involves more.

A "district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Instead, there is a "prescribed a two-step process for evaluating § 1782 applications." *Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 146 (2d Cir. 2022). After the "statutory requirements are met," which is a legal determination, a district court *may* [then] grant discovery under § 1782 *in its discretion.*" *Mees v. Butler*, 793 F.3d 291, 297 (2d Cir. 2015) (emphasis added); *see also In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 78 (2d Cir. 1997) (same); *In re Application Pursuant to 28 U.S.C. Section 1782 of Okean B.V. and Logistic Solution Int'l to Take Discovery of Chadborne & Parke LLP*, 60 F. Supp.3d 419, 427 (S.D.N.Y. 2014) ("Once

---

[1] "Additionally, the statute requires that the discovery not be in violation of any legally applicable privilege." *Mangouras*, 980 F.3d at 97 (internal quotation marks omitted).

these statutory requirements are satisfied, district courts have broad discretion over the issuance of discovery orders pursuant to § 1782.") (cleaned up).

In *Intel Corp.*, 542 U.S. at 264-65, the Supreme Court "identified four factors guiding this exercise of discretion," *Mangouras*, 980 F.3d at 97.  Those factors include: (1) whether the person or entity from which the discovery is sought is a participant in the foreign proceedings, in which case the need for § 1782 assistance generally is not as apparent; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign government, court, or agency to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome ("*Intel* factors"). *See id.* at 97-98.

The *Intel* factors are "non-exclusive" and "are not to be applied mechanically." *Banoka S. à.r.l. v. Elliot Management Corp.*, 148 F.4th 54, 65 (2d Cir. 2025) (internal quotation marks omitted); *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244-45 (2d Cir. 2018) (same), *cert. denied* 586 U.S. 1076 (2019).  And "[d]istrict courts [must also] take into account any other pertinent issues arising from the facts of the particular dispute in addition to the *Intel* factors."  *Bankoa*, 148 F.4th at 65 (internal quotation marks omitted); *see also id.* ("a district court may freely consider and weigh factors that it finds relevant – even those which do not fall neatly within one of the four *Intel* factors").  All in all, the decision whether to grant discovery under § 1782 involves a "fact-sensitive and highly contextual analysis."  *Id.* at 68 (internal quotation marks omitted).

B. The Application Should be Denied Because TRESE Fails to Show that
A&M Holdings is in 'Custody or Control' of the Information Sought

TRESE technically satisfies § 1782's first and third statutory conditions – *i.e.*, A&M

Holdings is found in this district and the Application was made by an "interested person"

(TRESE is a party to relevant Mexican litigation). It is unclear, however, if TRESE has

shown that the discovery at issue is "for use" in a foreign proceeding – the statute's

second requirement." *See In re Application of Ativos Especiais II - Fundo de Investimento em

Direitos Creditorios* ("*Ativos Especiais II*"), 2024 WL 4169550, at *4 (S.D.N.Y. Sep. 12, 2024)

("'for use' statutory prerequisite assesses the *practical ability* of an applicant to place a

beneficial document – or information it contains – before a foreign tribunal" (cleaned up

and emphasis in original). Both § 1782 and recent caselaw seem to link the "for use"

requirement to a subpoenaed party's "possession, custody or control" of the documents

sought, as that standard is applied under Rule 26 of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 26 ("Rule 26").

For example, the Second Circuit recently explained that "[s]ection 1782(a)

authorizes a district court to provide discovery assistance *for use* in a proceeding in a

foreign or international tribunal *in accordance with* the Federal Rules of Civil Procedure,

which require a subpoenaed party to produce documents that are in the *possession, custody

or control*." *Aguila Energia E Participacoes Ltda. v. JPMorgan Chase & Co.*, 2025 WL 1661987,

*1 (2d Cir. June 12, 2025) (summary order) (cleaned up and emphasis added); *cf. In re

Application of Passport Special Opps. Master Fund, LP*, 2016 WL 844833, at *4 (S.D.N.Y.

March 1, 2016) ("Because § 1782 provides for discovery for use in foreign proceedings

shall be produced in accordance with the Federal Rules of Civil Procedure, the Court first considers the threshold question of whether the subpoena satisfies the requirements of Rule 45.") (cleaned up).

But whether the statute's "for use" requirement formally incorporates Rule 26's "possession, custody, or control" standard does not change the outcome here. An applicant's failure to make that showing is a fatal defect in all events, requiring the immediate denial of a § 1782 request. *See In re Boustany*, 2024 WL 473569, at \*2 (S.D.N.Y. Feb. 7, 2024) (denying § 1782 application because "documents produced pursuant to [§ 1782] must be in accordance with the Federal Rules of Civil Procedure" which direct that "a subpoenaed party must only produce documents that are in its possess, custody, or control") (internal quotation marks omitted).

To be clear, the "party seeking discovery has the burden of showing that the other party has control over the materials sought and, if they fail to do so, the court's § 1782 analysis need go no farther." *Boustany*, 2024 WL 473568 at \*2; *In re FourWorld Event Opportunities Fund LP*, 2023 WL 3375140, at \*3 (S.D.N.Y. May 11, 2023) (same). That rule is hard and fast. "Courts in this District routinely deny § 1782 applications . . . where applicants fail to demonstrate the requisite degree of control." *Aguila Energia e Particpacoes Ltda. v. JPMorgan Chase & Co.*, 2024 WL 3650347, \*8 (S.D.N.Y. Feb. 29, 2024) (listing cases), *R&R adopted* 2024 WL 3373416 (S.D.N.Y. July 10, 2024), *aff'd* 2025 WL 1661987 (2d Cir. June 12, 2025).

TRESE ignores its obligation to make that showing and provides no evidence that A&M Holdings has sufficient possession and control of A&M Mexico's records to

produce them. Instead, TRESE merely relies on unsupported assumptions. Blurring their separate corporate identities, the Application only states in passing that A&M Mexico is "an affiliate" of "Alvarez & Marsal." TRESE Br. at 8. It then makes several bald assertions about their relationship.

Thus, without offering any proof, TRESE asserts that A&M *Holdings* "is *well positioned* to have knowledge concerning CIBanco's unlawful actions" because A&M *Mexico* was appointed CIBanco's administrator. TRESE Br. at 9. And solely because A&M *Mexico* is the bank's administrator, TRESE argues – again without proof – that A&M *Holdings* "is *likely* to have further knowledge of CIBanco's activities in defiance of Mexican court orders." *See* Declaration of Manuel Gomez Morin Martinez del Rio (undated), Dkt. Doc. No. 5, ¶ 25 (emphasis added). Based upon this presupposed "knowledge," TRESE further speculates that the documents sought from A&M *Holdings* are "also *likely* to be relevant to current and planned Mexican proceedings." *Id.*, ¶ 24 (emphasis added).

Those arguments are hollow. Each statement assumes rather than proves its conclusion – *i.e.,* that A&M Holdings is in custody or control of A&M Mexico's files. Absent its set of presuppositions, TRESE only musters "conjecture" to carry its evidentiary burden, which does not suffice. *Boustany*, 2024 WL 473569, at 2.

Surely, the simple fact that A&M Holdings is the corporate parent of A&M Mexico does not establish the former's custody and control of the materials sought. *See Anguila Energia I*, 2024 WL 3650357, at *8 ("a corporation is not automatically deemed to be in possession, custody, or control of documents possessed by its subsidiaries, or vise-

versa"); *see also FourWorld Event,* 2023 WL 3375140, at *2 (same); *In re Liverpool Ltd. P'ship*, 2021 WL 5645044, at *3 (S.D.N.Y. Nov. 24, 2021) (same). Yet, TRESE offers no other evidence to consider. It points to no proof that "documents ordinarily flow between [the] two affiliated entities," *Boustany*, 2024 WL 473569, at 2, nor does it present any evidence that the two companies share operational functions, such as compliance, risk management, or financial reporting responsibilities. Similarly, there is no suggestion in the record that they share common employees or facilities. *See, Anguila Energia I*, 2024 WL 3650357, at *4 (listing indicia of custody or control); *FourWorld Event,* 2023 WL 3375140, at *2 (same).[2]

In short, the factual record does not support TRESE's assumptions regarding A&M Holdings' custody or control of the information sought by the Application. The evidence establishes only that (1) A&M Holdings is an entirely separate corporate entity from A&M Mexico; (2) A&M Holdings staff have not participated in the CIBanco engagement; and (3) A&M Holdings does not have any documents relating to the CIBanco engagement. *See* Meneses Dec., ¶¶ 3, 9-10, Feigenbaum Dec., ¶¶ 3-5.

Those facts do not satisfy TRESE's threshold evidentiary burden. On the contrary, they make the task more challenging. Because TRESE has failed "to establish that the documents sought are within the [respondent's] control" the Court should deny the Application on those grounds alone. *Liverpool Ltd. P'ship*, 2021 WL 5645044, at *3. "The

---

[2] Notably, even in case in which a parent company and its subsidiary shared a document server, the Second Circuit rejected a § 1782 application because discovery based on the common server "would effectively collapse corporate separations and incentivize companies to maintain segregated computer systems." *See Banoka* ,148 F.4th at 70 (cleaned up).

15

Court's analysis need not venture further." *FourWorld Event,* 2023 WL 3375140, at *3 (denying § 1782 application for failing to show company's custody or control of subpoenaed documents); *see also Boustany*, 2024 WL 473569, at 2 (same).

C. The Application Should be Denied Because Three of the Four *Intel* Factors Weigh Heavily Against Granting TRESE Discovery

If the Court goes on to consider the discretionary *Intel* factors, it should still deny the Application. Even if the Court assumed that the second *Intel* factor supports TRESE's requested discovery (which considers a foreign court is generally amenable to receiving evidence acquired using § 1782) the remaining three *Intel* factors militate strongly against granting the Application. Consideration of those *Intel* factors quickly illuminates why the Application's approval would deeply frustrate the statute's "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa*, 51 F.3d at 1097. That result would thus exceed the Court's discretion.

1. The first *Intel* factor weighs against granting discovery.

The first *Intel* factor considers if the entity from which the discovery is sought is a participant in the foreign proceedings, reasoning that a participant's need for § 1782 assistance in that circumstance is not obvious. *See Intel*, 542 U.S. at 264. Technically, A&M Holdings is not a party in the Mexican Litigation, so one might conclude that the first factor supports discovery here. But that fact does not end the analysis.

The Second Circuit has "on multiple occasions found that the first *Intel* factor weighed *against* relief even where the discovery target was not a party to the foreign proceeding." *Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d Cir. 2024) (emphasis added); *see also Kiobel*, 895 F.3d at 245 ("when the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition"). In that scenario, "[c]ourts evaluating this factor should not look to the literal subpoena recipient but rather to the real party from whom the documents are sought." *Application of Mammoet Salvage, B.V. for an Order to Take Discovery for Use in Foreign Proceedings*, 2025 WL 3009507, at *15 (S.D.N.Y. Oct. 28, 2025) (internal quotation marks omitted). In other words, "[t]he factor looks to substance not form." *Ativos Especiais II*, 2024 WL 4169550, at *10.

The Application does not seek *A&M Mexico's* documents from A&M Holdings. In "substance," the Application seeks *CIBanco's* documents from A&M Holdings. *Ativos Especiais II,* 2024 WL 4169550, at *10. Thus, "for all intents and purposes petitioners are seeking discovery" from CIBanco and CIBanco *is* a party to the Mexican legal proceedings. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004) (affirming denial of § 1782 application seeking documents of petitioner's adversary in foreign litigation from adversary's attorneys); *see also Frasers Grp. PLC*, 95 F.4th at 59 (affirming denial of § 1782 application where real party from which documents were sought was adverse party in foreign litigation); *Associacao dos Profissionais dos Correios v. Bank of New York Mellon Corp.*, 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (same), *R&R adopted* 2024 WL 429019 (S.D.N.Y. Sept. 25, 2024). In those circumstances, "everything

else being equal, if the applicant can obtain the records from the party to the foreign proceeding, it should obtain them from that party." *Ativos Especiais II*, 2024 WL 4169550, at *11.

TRESE has never tried to get CIBanco's documents from A&M Mexico (acting as the bank's appointed administrator) in the Mexican Litigation. Its apparent explanation for not taking that route is that TRESE's "ability to take discovery from *CIBanco* in those proceedings is highly limited *due to restrictions on discovery available in the Mexican courts.*" TRESE Br. at 9 (emphasis added); *see also id.* at 20 ("under Mexican law, discovery available against parties in Foreign Proceedings such as CIBanco is limited"). But curiously, TRESE never identifies those limitations. Still, despite the acknowledged yet undisclosed "restrictions" on CIBanco, *id.*, TRESE represents that the "laws of Mexico do *not* prohibit seeking the bank records and other information requested in this application," and that "financial records and related testimony[] are regularly admitted in Mexico." *Id.* at 20 (emphasis added).

TRESE's arguments are meritless. First, since October 26, 2025, IPAB has been CIBanco's bank administrator and *A&M Mexico* has been performing IPAB's administrative responsibilities, including oversight of CIBanco's litigation. *See* Meneses Dec. ¶¶ 6-7, 10. TRESE has known that CIBanco is under government administration since June 2025 and therefore should have sought discovery from *A&M Mexico* in the Mexican Litigation. It did not.

Second, although in certain circumstances Mexican law may permit a party in litigation to seek banking information, the critical question is "from whom?" Contrary to

TRESE's somewhat misleading argument, Mexican law *does* put extensive and strict limitations on the disclosure of banking information by *financial institutions* like CIBanco – even in litigation. *See* section C.2, *infra*. That legal landscape could explain TRESE's obvious aversion to seeking this discovery in Mexico.

TRESE's decision not to try its luck with the Mexican courts may not be a "categorical bar" to § 1782 relief, but this Court may certainly treat that choice as a negative consideration in the discretionary calculus. *Frasers Grp.*, 95 F.4th at 58. The first *Intel* factor aligns squarely against the Application.

> *2.* The third *Intel* factor weighs against granting discovery.

The third *Intel* factor is also a high hurdle to § 1782 relief. The Application is clearly designed to circumvent "truth-gathering restrictions" that govern foreign proceedings. *Intel*, 542 U.S. at 265. "[C]ircumvention occurs where the applicant uses a § 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence." *Fed. Republic of Nigeria*, 27 F.4th at 153 (emphasis in original). The correct analysis therefore "distinguishes between rules of the foreign jurisdiction that *prohibit* the acquisition or use of certain materials, and rules that merely *fail to facilitate* investigation of claims." *Ativos Especiais II*, 2024 WL 4169550, at *13 (emphasis in original and internal quotation marks omitted).[3] Where, as here, foreign rules heavily restrict the

---

[3] Additionally, "courts evaluating the third *Intel* factor consider whether a petitioner is pursuing discovery in bad faith." *In re Application of Palladian Partners, L.P.*, 2025 WL 2814719, at *10 (S.D.N.Y. Oct. 3, 2025) (internal quotation marks omitted). Targeting entities that lack custody or control of the materials sought, *see Aguila Energia I*, 2024 WL 3650347 at *11, and propounding unreasonably broad information demands, *Palladian Partners*, 2025 WL 2814719, at *10, both indicate bad-faith conduct. For the reasons set forth in section B, *supra*, and section C.3 *infra*, the Application demonstrates substantial bad faith.

disclosure of banking information, "the interests of comity that Section 1782 is intended to serve suggest that the United States court as well should honor those prohibitions and decline to order discovery." *Id.*

Article 142 of the Mexican Credit Institutions Law ("Article 42") establishes the regulatory framework governing banks, both in their corporate organization and in the conduct of their principal activities with clients and with other financial institutions. The statute also imposes a series of obligations on banks for the protection of their clients' interests, including the duty to safeguard all information and documentation related to the transactions entered into and services provided by such institutions. Article 142 establishes that all information concerning a client's deposits, operations, services, and financial records is strictly confidential ("Banking Secrecy"). Banks, their officers, employees, representatives, and any third parties acting on their behalf are prohibited from disclosing such information to anyone who is not: (i) the account holder, (ii) the debtor, as the bank's client, (iii) a beneficiary, (iv) a legal representative, or (v) a person otherwise expressly authorized under Mexican law. The confidentiality obligation extends to all forms of financial information, whether operational, transactional, contractual, or historical. *See* Declaration of César Guillermo Flores Chao, dated November 25, 2025 ("Chao Dec."), ¶ 6.[4]

---

[4] A true and correct copy of Article 142, together with an English translation, is annexed as Exhibit A to the Chao Declaration. As a "legislative declaration[]," Article 142 provides the required "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782." *Euromepa*, 51 F.3d at 1100.

In addition to Banking Secrecy, Mexican law also protects information related to trusts ("Trust Secrecy"). Under Article 142 and the applicable regulations governing trust operations, trustees are legally obligated to maintain the confidentiality of all information involving: (i) settlors, (ii) trust beneficiaries, (iii) trust assets, (iv) trust operations, and (v) any documentation, records, contracts, or communications relating to the administration or execution of the trust. *See* Chao Dec., ¶ 8.

The restrictions applicable to Banking and Trust Secrecy, specifically regarding the disclosure of information and documentation relating to clients and the transactions they conduct with credit institutions, include certain exceptions expressly provided by law. Under those exceptions, the institution or its officers may disclose information that is otherwise protected by confidentiality obligations. *See* Chao Dec., ¶ 9.

The first exception consists of the disclosure of such information within the context of a judicial proceeding and pursuant to an order issued by a competent judicial authority, provided that the person appearing as a party to such proceeding is the holder of the relevant transaction or one of the individuals referred to in the first paragraph of Article 142. This means that not every lawsuit or judicial proceeding allows access to banking information; such access is only permissible when there is a direct and immediate connection between the proceeding and the holder of the transactions for which information is sought. *See* Chao Dec., ¶ 10.[5]

---

[5] In this case, the trust administered by CIBanco was, itself, the bank's account holder. Also, CIBanco's administration of that trust involved transactions with multiple parties having no "direct and immediate connection" to the Mexican Litigation.

Article 142 also sets forth specific situations in which a credit institution is obligated to provide information to administrative authorities of the Mexican Government. However, this exception must be based on a formal request supported by a legal cause, linked to a regulatory procedure or authority function directly related to the account holder. Under no circumstances may disclosure result from discretionary, arbitrary, or unsubstantiated acts by an authority. These requests must be duly grounded and reasoned and must be submitted through the National Banking and Securities Commission. *See* Chao Dec., ¶ 11.

Furthermore, the statute establishes sanctions including fines and imprisonment for officers and employees of banks who disclose information in violation of Article 142. This provision applies not only to bank employees, but also to any individual who performs administrative, managerial, or supervisory functions within the institution. *See* Chao Dec., ¶ 13.

Neither banking nor fiduciary secrecy requirements contain exceptions that would permit disclosure of confidential information to foreign private entities, foreign courts, or foreign counsel solely based on a foreign legal procedure or request. The exceptions set forth in the statute only authorize the disclosure of information to Mexican governmental authorities and do not provide an express exception permitting disclosure to foreign governmental entities or in judicial or administrative proceedings abroad. In the absence of a clear exception, credit institutions must maintain the confidentiality and secrecy of the information, even when requested by foreign authorities. *See* Chao Dec., ¶ 14.

Here, granting the Application would allow TRESE to evade Article 142.[6] By getting CIBanco's records and related testimony indirectly from the *U.S. corporate affiliate of the bank's government-appointed liquidator*, TRESE would cleverly avoid the scrutiny of Mexican courts – an important safeguard in Mexico against the abuse of confidential financial information. Indeed, the national policy implemented by Article 142 is so culturally important in Mexico that the Mexican Supreme Court of Justice decided that even certain statutory *exceptions* to Article 142 may, in some cases, infringe upon human rights, particularly the right to privacy, when a request for information is not sufficiently limited, grounded, reasoned and goes without judicial control. *See* Chao Dec., ¶ 13.

By complying with TRESE's discovery demand, A&M Mexico would violate Article 142 and expose itself to fines and penalties under Mexican law. *See* Chao Dec., ¶ 13. That onus is too "intrusive and burdensome" for A&M Mexico to bear. *See Okean B.V.*, 60 F. Supp.3d at 432 (denying § 1782 relief in part because compliance with document demand would subject subpoenaed party to "potential sanctions for breaching the foreign laws preventing their disclosure"). And surely promoting such evasive and illegal conduct would not advance the "twin aims" of § 1782. *See e.g.*, *In re Escallon*, 323 F. Supp.3d 552, 560 (S.D.N.Y. 2018) (rejecting § 1782 application, in part, because request for depositions was "an apparent attempt to circumvent" Colombian restriction on deposing same witness twice).

---

[6] Candidly, those bank-specific prohibitions explain exactly why TRESE's "ability to take discovery from CIBanco in [the Mexican Litigation] is highly limited" and, thus, TRESE's motive for exploiting § 1782. TRESE Br. at 9.

*Intel*'s third factor is another major strike against discovery.

### 3.  The fourth *Intel* factor weighs against granting discovery.

The fourth and last *Intel* factor considers whether a discovery request is overbroad and burdensome. *See Intel*, 542 U.S. at 265.  The assessment is governed by the "familiar standards" of Fed. R. Civ. P. 26 and, "[a]s applied to § 1782 applications, Rule 26 contemplates that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Palladian Partners*, 2025 WL 2814719, at *11 (internal quotation marks and citations omitted); *see also Mees*, 793 F.3d at 302 (same).  And, generally, "[r]equests for 'all' documents are inherently overbroad unless the 'all' refers to very discrete set of documents."  *Associacao dos Profissionais dos Correios*, 2022 WL 4955312, at *8; *see also Agerbrink v. Model Serv. LLC*, 2017 WL 933095, at * 2 (S.D.N.Y. March 8, 2017) ("Courts have long held that requests for 'any and all' documents are generally improper.").

By any standard, TRESE's discovery requests are astoundingly overbroad and can only be described as a tremendously invasive fishing expedition.  Indeed, the abusive character of the document demand jumps off the page.

The text of the demand seeks:

> *All* Documents and Communications in Your possession, custody, or control relating to the *role played* by CIBanco in connection with the Trust Agreement or any of the Relevant Parties *arising from or relating to* the Trust Agreement.

TRESE *Ex Parte Application,* Exh. B at 3**.**  (emphasis added).  The call for "All Documents and Communications" involving extremely vague terms should, by itself, render the

24

request inoperative. *See Banoka*, 148 F.4th at 69 ("no doubt" document requests were too "expansive" where "they encompassed virtually any documents possessed by the [subpoena recipients] that might be related to the sale of a hotel").

Even worse, by unpacking terms that the subpoena purportedly defines, the demand's already unmanageable scope expands geometrically. In relevant part, the document subpoena provides that:

- "You[r]" means ALVAREZ & MARSAL and all employees, agents, representatives, subsidiaries, affiliates, assignees or other persons acting or purporting to act on its behalf;

- "Trust Agreement" means the Irrevocable Trust Agreement between TRESE and *five* other commercial entities that was administered by CIBanco;

- "Relevant Parties" means the *eight* individuals and entities subject to the Trust Agreement; and

- The definitions of seven "Relevant Parties" also include all their unidentified subsidiaries and affiliates.

TRESE *Ex Parte Application,* Exh. B at 1-2. Further, TRESE wants all documents that are responsive to this convoluted and unbounded request from 2015 to the present – *ten years*. *See id.*, Exh. B at 3.

Understandably, TRESE does not even try to explain how its document request is "proportional to the needs" of the Mexican Litigation because that would be an impossible task. *Palladian Partners*, 2025 WL 2814719, at *11 (internal quotation marks omitted). The demand is ridiculous and smacks of bad faith. *See Palladian Partners*, 2025 WL 2814719, at *10. It is thus fundamentally at odds with the fourth *Intel* factor. *See Banoka*, 148 F.4th at 69 (rejecting § 1782 application, concluding document requests were

25

"unduly broad" where they "compris[ed] 14 expansive categories, most of which [sought] all documents and communications related to various issues without limitation") (internal quotation marks omitted); *In re Asia Maritime Pacific Ltd.*, 253 F. Supp.3d 701, 705 (S.D.N.Y. 2015) (rejecting § 1782 application that sought to "direct sixteen large banks to conduct broad searches for information when [applicant] . . . provided no basis to believe" that any particular bank transacted relevant business).

The same conclusion applies to TRESE's requests for witness testimony. *See* TRESE *Ex Parte Application,* Exh. B at 3. Besides being inextricably tied to the Application's grossly over broad document request, they are "unduly burdensome" for yet another reason. *Banoka*, 148 F.4th at 69. A&M Holdings personnel could not possibly provide testimony. They, "as opposed to the employees of their [foreign]-based counterpart," A&M Mexico, "were not directly involved" in CIBanco's administration. *Id.* Indeed, none of them was at all involved in that project. *See* Meneses Dec., ¶ 9; Feigenbaum Dec., ¶ 5. Dealing with very similar facts, the Second Circuit agreed that "extraterritorial discovery" (here, ordering A&M Holdings to secure witnesses testimony abroad from employees of A&M Mexico) is not warranted. *Banoka*, 148 F.4th at 69 (affirming denial of § 1782 requests for U.K. witness depositions where employees of U.K. affiliate of U.S. company were primarily responsible for the project).

Even without the other discretionary considerations in the balance, the fourth *Intel* factor should defeat the Application. And considering all the *Intel* factors collectively, it surely would be an abuse of discretion to grant it.

Bottom line, the Court should not "lend its subpoena power to this fishing expedition." *Asia Maritime Pacific Ltd.*, 253 F. Supp.3d at 703.

## CONCLUSION

For all the reasons stated above, the Court should deny the Application.

Dated: November 28, 2025
New York, New York

Respectfully submitted,

By: */s/ Daniel S. Alter*_____
Daniel S. Alter (DA-7158)
Broadfield U.S., LLP
540 Madison Avenue, 33rd Fl
New York, N.Y. 10022
Tel. (212) 390-1256
danielalter@broadfieldlaw.com

*Attorneys for Respondent Alvarez & Marsal Holdings, LLP*