UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TECNOLOGIAS RELACIONADAS con ENERGIA y SERVICIOS ESPECIALIZADOS, S.A. De C.V., et al., Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 To Take Discovery for Use in Foreign Proceedings. | NO. 25-MC-0435 (JPO) (RFT)<br><br>**REPORT & RECOMMENDATION** |

**TO THE HONORABLE J. PAUL OETKEN, UNITED STATES DISTRICT JUDGE:**

On October 1, 2025, Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V. ("TRESE") and its bankruptcy trustee, Grupo Empresarial Anacar, S.A. de C.V. ("Anacar"), (together, "Petitioners") submitted an ex parte Application (the "Application") pursuant to 28 U.S.C. § 1782 for an order authorizing Petitioners to serve subpoenas on United Overseas Bank New York Agency ("UOB-NYA"), The Bank of New York Mellon Corp. ("BNYM"), and Alvarez & Marsal Holdings, LLC ("A&M") (together, Respondents) to obtain discovery for use in in ongoing foreign bankruptcy proceedings and related proceedings in the Seventh District Court of Civil Matters in Mexico City, Mexico and other Mexican courts. (together, the "Foreign Proceedings"). (*See* ECF 1, Application ¶¶ 1-2.)[1] This report and recommendation addresses only the Application to the extent that it seeks discovery of A&M. A prior report and recommendation (ECF 41) addressed the Application in relation to BNYM (the "BNYM R&R"). Having reviewed Petitioners' and A&M's submissions, for the reasons set forth below, I

---

[1]     Unless otherwise indicated, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

respectfully recommend that the Application be DENIED[2] without prejudice to submission of a renewed application addressing the deficiencies identified in this report and recommendation.

## BACKGROUND

I assume familiarity with the factual background to the Application, which is set out in my report and recommendation addressing the discovery sought from BNYM (ECF 41); I also assume familiarity with the procedural history set forth in the BNYM R&R, and here, I highlight only the procedural history and factual background relating solely to A&M.

Petitioners supported their Application with, among other documents, a brief (ECF 4) and the declaration of an in-house attorney at TRESE, who supervises TRESE's involvement in ongoing proceedings concerning its bankruptcy. (*See* ECF 5, Declaration of Manuel Gomez Morin Martinez Del Rio ("First Martinez del Rio Decl.") ¶ 1.) On November 28, 2025, after being granted an extension of time (ECF 15), A&M filed a response in opposition to the Application with supporting papers. (*See* ECF 32, A&M's Opp.; ECF 29, Declaration of César Guillermo Flores Chao ("Flores Chao Decl."); ECF 30, Declaration of Sergio Meneses ("Meneses Decl."); ECF 31,

---

[2]    "Until recently, the consensus view in this District was that rulings on § 1782 applications are not dispositive, and therefore that such an application could be disposed by order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and Mgmt. Office*, No. 21-MC-0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in *Associação dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction to review the order issued by a Magistrate Judge denying an application under Section 1782 and remanded so that the order could be "treated as a report and recommendation." 2023 WL 3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive. I therefore make a report and recommendation on the Application rather than issuing an opinion and order.

Declaration of Daniel Feigenbaum ("Feigenbaum Decl.").) On December 15, 2025, Petitioners filed their reply in further support of the Application seeking discovery of A&M. (*See* ECF 37, Petitioners' A&M Reply; ECF 38, Second Declaration of Manuel Gomez Morin Martinez Del Rio ("Second Martinez Del Rio Decl.").)

From A&M, Petitioners seek testimony and all documents relating to the role played by a Mexican banking organization, CIBanco S.A., Institución de Banca Multiple ("CIBanco") in connection with the irrevocable trust agreement (the "Trust Agreement") created to manage payments from PEMEX, the Mexican state-owned oil and gas corporation, under the service contract to install, and operate a jack-up oil-drilling-services platform in the Gulf of Mexico; the trust established by the Trust Agreement is administered by CIBanco. (*See* ECF 1, Application ¶¶ 3-4, 10 & Exh. B at 2, 7.) Petitioners contend that this discovery is relevant to CIBanco's alleged diversion of funds owed to TRESE, in violation of local bankruptcy court orders. (*See* ECF 1, Application ¶ 10.)

A&M Mexico, which is an indirect subsidiary of A&M, was engaged to serve as CIBanco's provisional administrator after the United States government charged CIBanco in connection with money laundering by Mexican drug cartels. (*See* ECF 31, Feigenbaum Decl. ¶ 3; ECF 30, Meneses Decl. ¶¶ 3, 5, 7.)[3] A&M never provided services to CIBanco; A&M Mexico was solely

---

[3]     Alvarez & Marsal Latin America, LLC ("A&M Latin America") is a wholly owned subsidiary of A&M. (*See* ECF 31, Feigenbaum Decl. ¶¶ 3-4.) A&M also owns 99.5% of Alvarez and Marsal Mexico Holdings, LLC ("A&M Mexico Holdings"); Alvarez and Marsal Internal Corporate Holdings, LLC holds the remaining 0.5%. (*See id.* ¶ 4.) A&M Mexico is a subsidiary of A&M Latin America and A&M Mexico Holdings. (*See id.* ¶ 3.) A&M Mexico's principal place of business is in Mexico City, Mexico, and the company was formed under Mexican law. (*See id.* ¶ 2; Meneses Decl. ¶ 3.) A&M Mexico does not have any offices in the United States. (*See* ECF 31, Feigenbaum Decl. ¶ 2.)

responsible for the CIBanco engagement. (*See* ECF 30, Meneses Decl. ¶¶ 9-10; ECF 31, Feigenbaum Decl. ¶ 5.)

**DISCUSSION**

I.      **Legal Standard**

This report and recommendation assumes familiarity with the statutory framework for seeking discovery in connection with a foreign litigation under 28 U.S.C. § 1782(a), as well as with the four discretionary factors (the "*Intel* Factors") set out by the Supreme Court in *Intel Corp. v. Advanced Micro Devices*, 542 U.S. 241,  264-65 (2004) to provide guidance to courts ruling on Section 1782 applications. The BNYM R&R sets out an overview of the relevant caselaw on the statutory framework and the *Intel* Factors. (*See* ECF 41, BNYM R&R at 6-7.)

II.     **Analysis**

A.      The Statutory Requirements

Petitioners argue that they have met the Section 1782 statutory requirements. (*See* ECF 4, Pets.' Mem. at 5, 15-20.) For the reasons set forth below, I agree with Petitioners that the statutory requirements are met with respect to A&M.

1.  Found in this District

A&M Holdings is a limited liability company organized under the laws of Delaware with its principal place of business in New York, New York. (*See* ECF 31, Feigenbaum Decl. ¶ 4; ECF 30, Meneses Decl. ¶ 2.) A&M does not contest that it resides in this District. (*See* ECF 32, A&M Opp. at 12.)  Thus, the first statutory requirement is satisfied. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("[T]he place of incorporation and principal place of business are paradigm

. . . bases for general jurisdiction."); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018) (holding that a corporation that maintained its principal place of business within the district satisfied the statutory "resides or is found" within district requirement for discovery order), *aff'd*, 939 F.3d 520 (2d Cir. 2019).

### 2.   The Discovery Sought Is for Use in a Foreign Proceeding

Petitioners state that they seek discovery for use in the Foreign Proceedings, in that the Foreign Proceedings are the types of proceedings contemplated by Section 1782 and that the discovery sought is relevant to those actions. (*See* ECF 4, Pets.' Mem. at 18.) A&M suggests that the Application may not meet the for use requirement, because the statute itself and recent caselaw suggest that if a party from which discovery is sought does not have possession, custody, or control over the documents in question, as those terms are used in Rule 26 of the Federal Rules of Civil Procedure, the discovery sought is not for use in a foreign proceeding. (*See* ECF 32, A&M Opp. at 12-16) (citing *Aguila Energia E. Participacoes Ltda. v. JPMorgan Chase & Co.,* No. 24-CV-2133, 2025 WL 1661987, at *1 (2d Cir. June 12, 2025) and *In re Passport Special Opps. Master Fund, LP,* 16-MC-0033 (PAE), 2016 WL 844833, at *4 (S.D.N.Y. Mar. 1, 2016)).) I am not persuaded that the statute's for use requirement incorporates Rule 26's possession, custody, or control standard, and so I address the question of A&M's possession, custody, or control of the documents at issue in connection with the fourth *Intel* Factor – whether the discovery sought is unduly burdensome. *See infra* Part (B)(4). For the reasons discussed in the BNYM R&R, the second statutory requirement is satisfied as to A&M. (*See* ECF 41, BNYM R&R at 9-10.)

3.    The Application Is Brought by an Interested Party

The Application is brought by Petitioners, which are interested parties in the pending Foreign Proceedings: TRESE is debtor in Mexican bankruptcy proceedings, and Anacar, TRESE's trustee, is bringing the amparo actions. (*See* ECF 4, Pets.' Mem. at 19.) A&M does not contest that Petitioners meet this requirement. (*See* ECF 32, A&M Opp. at 12.)  For the reasons set forth in my BNYM R&R, Petitioners have established that they are interested parties for the purposes of Section 1782. (*See* ECF 41, BNYM R&R at 11.)

*** 

Having been persuaded that the Application meets the statutory requirements of Section 1782, I turn to the discretionary factors set forth in *Intel*.

B.        The *Intel* Discretionary Factors

Petitioners argues that each of the four *Intel* Factors weighs in favor of granting the discovery requested by the proposed subpoena: (1) Respondents are not parties to the Foreign Proceedings; (2) there is no indication that courts overseeing the Foreign Proceedings would reject the requested discovery; (3) the Application does not reflect an effort to circumvent foreign restrictions on discovery; and (4) the Application is narrowly tailored to include only relevant and readily identifiable information and documents and avoid any undue burden on Respondents. (ECF 4, Pets.' Mem. at 20-26.) A&M contends that the Application satisfies only the second *Intel* Factor. (*See* ECF 32, A&M Opp. at 16.)

For the reasons set forth below, the discretionary *Intel* Factors, on balance, disfavor granting the Application.

6

1. The First *Intel* Factor: Whether the Entity from Which
   Discovery Is Sought Is a Participant in the Foreign Proceeding

   a. *Legal Framework*

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is

sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid

generally is not as apparent." *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

The factor distinguishes between discovery from participants in a foreign proceeding and

nonparticipants because "nonparticipants in the foreign proceeding may be outside the foreign

tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be

unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. This factor militates against granting

discovery to petitioners that "for all intents and purposes . . . seek[ ] discovery from . . . their

opponent in the [foreign proceeding]." *Schmitz v. Bernstein Liebhard & Lifshitz*, LLP, 376 F.3d

79, 85 (2d Cir. 2004) (citing *Intel,* 542 U.S. at 264).

Allowing discovery from a U.S. respondent that is the agent of a petitioner's foreign

adversary when the documents sought are within the possession or control of the petitioner's

foreign adversary could "invite foreign parties to end-run directly seeking discovery from their

adversaries in the foreign proceeding by serving § 1782 subpoenas on the adversaries' U.S.-

based agents." *In re Klein*, No. 23-MC-0211 (PAE), 2023 WL 8827847, at *11 (S.D.N.Y. Dec. 21,

2023). "[E]verything else being equal, if the applicant can obtain the records from the party to

the foreign proceeding, it should obtain them from that party." *In re Ativos Especiais*, No. 24-

MC-0119 (LJL), 2024 WL 4169550, at *11 (S.D.N.Y. Sep. 12, 2024) ("*Ativos Especiais II*"). "A

foreign tribunal has jurisdiction over those appearing before it, and can itself order them to

7

produce evidence." *In re Elvis Presley Enters. LLC*, No. 15-MC-0386 (DLC), 2016 WL 843380, at *2 (S.D.N.Y. Mar. 1, 2016).

Section 1782 includes no exhaustion requirement – a petitioner need not first be denied discovery in a foreign proceeding before filing a petition. *See In re BNP Paribas*, No. 18-MC-0047 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018) ("Courts may grant § 1782 applications even where the applicant did not first seek discovery in the foreign tribunal . . . , or where the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding."). However, a court considering a Section 1782 petition may consider whether a foreign court could order the parties before it to produce documents. *See, e.g., Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 58 (2d Cir. 2024) (finding that consideration of whether documents were available in the foreign proceedings was appropriate and did not impermissibly impose an exhaustion requirement); *Effecten-Spiegel AG v. Lynch*, 771 F. App'x 38, 39 (2d Cir. 2019) ("With respect to the first and second *Intel* Factors, the District Court was entitled to consider the possibility that much of the requested discovery could be obtained from . . . a party to the [foreign] litigation."). To the extent that the discovery sought by a Section 1782 petition is within the jurisdictional reach of the court in which the relevant foreign proceeding is pending, the first *Intel* Factor weighs in against granting the discovery request. *See In re Postalis*, No. 18-MC-0497 (JGK), 2018 WL 6725406, at *6 (S.D.N.Y. Dec. 20, 2018) (denying the petitioner's application for an order pursuant to Section 1782 where the requested discovery was within the jurisdictional reach of the applicable foreign courts).

"[C]ourts evaluating this factor should look not to the literal subpoena recipient but rather to the real party from whom the documents are sought." *In re Mammoet Salvage, B.V.*,

8

No. 23-MC-0073 (LJL), 2025 WL 3009507, at *15 (S.D.N.Y. Oct. 28, 2025). The first *Intel* Factor "looks to substance not form." *Ativos Especiais II*, 2024 WL 4169550, at *10; *see also Schmitz*, 376 F.3d at 85 (affirming denial of Section 1782 application seeking documents of the petitioner's adversary in a foreign proceeding from the adversary's attorneys); *Frasers Grp.*, 95 F.4th at 59 (affirming denial of a Section 1782 application where the real party from which the documents were sought (the respondent's employer) was an adverse party in the foreign litigation); *Associacão Profissionais dos Correios v. Bank of New York Mellon Corp.*, No. 22-MC-0132 (RA) (KHP), 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) ("*Correios*") (denying a Section 1782 application seeking discovery of the parent company of a participant in the foreign litigation), *report and recommendation adopted*, 2024 WL 4299019 (S.D.N.Y. Sept. 25, 2024). Accordingly, the Second Circuit has "on multiple occasions found that the first *Intel* factor weighed against relief even where the discovery target was not a party to the foreign proceeding." *Frasers Grp.*, 95 F.4th at 59; *see also Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) ("[W]hen the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition.").

In assessing whether the first *Intel* Factor supports granting a Section 1782 petition, the relevant question is what entity is the "real party from whom documents are sought" – that is, whether the discovery requests "are in substance a backdoor means of obtaining the documents of the adverse party in the foreign proceeding." *In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia*, No. 23-MC-0208 (JGLC) (GS), 2024 WL 555780, at *10 (S.D.N.Y. Jan. 18, 2024) (quoting *Kiobel*, 895 F.3d at 245). Courts in this District have held

9

that, when a subsidiary is a party to a foreign proceeding and the parent is the discovery target, the first *Intel* factor weighs against granting the requested discovery, which is within the foreign court's jurisdictional reach. *See In re Postalis*, 2018 WL 6725406, at *6 (finding that this factor weighed against granting discovery even though the parent company was not a party to the foreign proceeding, because a wholly owned subsidiary was a party, and the petition sought the subsidiary's documents and information); *In re Kreke Immobilien KG,* No. 13-MC-0110 (NRB), 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("To the extent that the petitioner seeks documents from Oppenheim – and is only doing so through Deutsche Bank because Oppenheim is now its wholly-owned subsidiary – discovery is fundamentally being sought from a participant in the German proceeding."); *In re OOO Promnefstroy*, No. 19-MC-0099 (RJS), 2009 WL 3335608, at *4-7 (S.D.N.Y. Oct 15, 2009) (ruling that, since the "vast majority" of the requested discovery was "also in the possession of parties to the foreign proceeding" and therefore within the jurisdictional reach of the foreign tribunal, the first *Intel* Factor cut against the petitioner).

### b. The Parties' Arguments

Petitioners assert that A&M is not a party to the Foreign Proceedings. Cite. A&M counters that the first *Intel* Factor "looks to substance not form," and that while A&M is not a participant in the Foreign Proceedings, the Application only nominally requests documents from A&M and in substance seeks documents from CIBanco, which is a participant in certain of the Foreign Proceedings. (*See* ECF 32, A&M Opp. at 16-17.) CIBanco's documents are in A&M Mexico's possession solely due to A&M Mexico's role as CIBanco's administrator, and so A&M concludes that the Application "for all intents and purposes" seeks discovery from CIBanco.

10

(*See id.* at 17.) A&M goes on to point out that Petitioners have not sought the documents in question in Mexico from A&M Mexico or CIBanco. (*See id.* at 18.) A&M contends that while Petitioners' decision not to seek the discovery at issue in the foreign proceedings "may not be a categorical bar to § 1782 relief," this Court should "treat that choice as a negative consideration in the discretionary calculus." (*See id.* at 19.) (quoting *Frasers Grp.*, 95 F.4th at 58).)

Petitioners respond that even if A&M's "argument is credited, it establishes only that A&M Mexico is the substantive party to the Foreign Proceedings, not A&M"; that the failure of Petitioners to request the documents in Mexico is irrelevant, because Section 1782 contains no "quasi-exhaustion requirement"; and that the discovery sought is unavailable in the Foreign Proceedings "due to restrictions on discovery available in the Mexican courts." (ECF 37, Pets.' A&M Reply at 10-11 (citing *Mees v. Buiter,* 793 F.3d 291, 303 (2d Cir. 2015) and *In re Servicio Pan Americano de Proteccion,* 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004)).

    *c.   Analysis*

Petitioners seek discovery from A&M of CIBanco documents and information. (*See* ECF 1, Application at ¶ 10.) A&M has the requested documents and information within its possession, custody, or control because A&M Mexico is an A&M subsidiary; and A&M Mexico has the requested documents and information within its possession, custody, or control because it was the administrator for CIBlanco. (*See* ECF 30, Meneses Decl. ¶¶ 7, 10.) Petitioners' argument that only A&M Mexico – but not A&M – is effectively a party to the Foreign Proceedings (*see* ECF 37, Pets.' A&M Reply at 10) is incorrect. Petitioners appear to acknowledge the case law holding that the first *Intel F*actor disfavors granting discovery that is available to a respondent only because of the respondent's agency relationship with a party to

the foreign proceeding. (*See* ECF 4, Pets.' Mem. at 22 (citing *In re Kreke Immobilien,* 2013 WL 5966916, at \*5).) That caselaw supports a conclusion that the first *Intel* Factor weighs against granting Petitioners discovery of documents and information within A&M Mexico's possession, custody, or control based on A&M Mexico's role as CIBanco's administrator.

Petitioners' contention that discovery from A&M is nevertheless fair game because A&M and A&M Mexico are distinct legal entities (*see id.* at 10) discounts the caselaw holding that the first *Intel* factor cuts against allowing discovery from the parent of an entity that is a party to the foreign proceedings. *See, e.g., In re Postalis,* 2018 WL 6725406, at \*5; *In re Elvis Presley Enters.,* 2016 WL 843380, at \*3.  Petitioners rely on cases that focus on the legal distinctions between different corporate entities. (*See* Pets.' A&M Reply at 10 (citing *In re Top Matrix Holdings Ltd.*, No. 18-MC-0465 (ER), 2020 WL 248716, at \*5 (S.D.N.Y. Jan. 16, 2020) and *In re Pidwell*, No. 21-MC-0166 (ALC) (KHP), 2022 WL 192987, at \*5 (S.D.N.Y. Jan. 21, 2022)).) The cases cited by Petitioners take a categorical approach to corporate formalities that is in tension with the numerous cases explaining that courts assessing the first *Intel* Factor should focus on substance over form. *See, e.g., Application of Mammoet Salvage,* 2025 WL 3009507, at \*15; *Ativos Especiais II*, 2024 WL 4169550, at \*10. The more persuasive cases, such as *In re Postalis* and *In re Kreke Immobilien,* support a conclusion that the first *Intel* Factor counsels against permitting Petitioners to obtain discovery from A&M of documents and information available to A&M solely because A&M Mexico is its subsidiary. *See In re Postalis*, 2018 WL 6725406, at \*6; *In re Kreke Immobilien,* 2013 WL 5966916, at \*5. I therefore conclude that the first *Intel* Factor militates against granting the discovery Petitioners seek from A&M.

12

That Section 1782 contains no quasi-exhaustion requirement and that the documents is not to the contrary. A court considering a Section 1782 petition may consider whether a foreign court could order the parties before it to produce documents. *See, e.g., Frasers Grp.*, 95 F.4th at 58; *Effecten-Spiegel*, 771 F. App'x at 39. "Although it is not required that [the petitioner] exhaust its remedies under [foreign] law, the fact that it has not done so here . . . weighs against granting the § 1782 application." *In re Elvis Presley Enters.*, 2016 WL 843380, at *3.[4]

2. The Second *Intel* Factor:
Receptivity of the Foreign Forum to Judicial Assistance

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98. Petitioners argue that this factor cuts in their favor because Mexican counsel states that the use of Section 1782 to obtain discovery is not prohibited or discouraged in Mexico. (*See* ECF 4, Pets.' Mem. at 22; ECF 5, First Martinez del Rio Decl. ¶ 30.) A&M does not argue to the contrary. (*See* ECF 32, A&M Opp. at 16.) For the reasons set forth in the BNYM R&R, I therefore

---

[4]     Petitioners also argue that the First *Intel* Factor supports granting the Application because the documents sought are unavailable under Mexican law. (*See* ECF 37, Pets.' A&M Reply at 11.) In support, they cite *In re Servicio Pan Americano de Proteccion* for the proposition that, "[b]ecause the [foreign] court may not be able to itself order [the respondent that is a party to the foreign proceeding] to produce the requested evidence . . . , exercise of this Court's power under Section 1782 may be necessary to enable discovery of the documents." (ECF 37, Pets.' A&M Reply at 11 (citing 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004)).) I address the discoverability or not of the documents and information sought in my analysis of the third *Intel* Factor. *See infra* Part (B)(3).

conclude that this factor supports granting the Application as to A&M. (*See* ECF 41, BNYM R&R at 12-13.)

> 3.    The Third *Intel* Factor: Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see also In re Hansainvest Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures").

> a.    The Parties' Arguments

Petitioners claim there is no indication that they are trying to avoid foreign restrictions on gathering evidence. (*See* ECF 4, Pets.' Mem. at 6, 15, 23-25.) A&M responds that the Application is designed to circumvent Mexican bank secrecy law and trust secrecy law, which heavily restrict disclosure of banking and trust-related information. (*See* ECF 32, A&M Opp. at 5-6, 19-23.) In support, A&M provides the declaration of a Mexican lawyer who describes the relevant statutory framework. (*See generally* ECF 29, Flores Chao Decl.) Flores Chao is the managing partner of Flores Chao y Asociados, S.C., a "Mexico-based banking and financial law firm" that serves as outside counsel for A&M Mexico. (*See id.* ¶ 1.) Flores Chao has more than 30 years of experience working on matters of banking regulation, financial institution

restructuring, government-appointed interventions, insolvency processes, and the liquidating of Mexican financial entities. (*See id.* ¶ 3.)

According to A&M's Mexican counsel, Article 142 of the Mexican Credit Institutions Law, among other requirements, obligates banks to safeguard all information and documentation related to the transactions entered into and services provided. (*See id.* ¶ 6.) Article 142 establishes that all information concerning a client's deposits, operations, services, and financial records is strictly confidential. (*See id.*) Article 142 and applicable regulations likewise obligate trustees to maintain the confidentiality of all trust-related information. (*See id.* ¶ 8.) Article 142 contains limited exceptions to the prohibitions on disclosure, including for disclosure of such information within the context of judicial proceedings involving a "holder of the relevant transaction" and certain other specified individuals or entities. (*Id.* ¶¶ 9-10.) Not every Mexican lawsuit or judicial proceeding allows discovery of banking or trust information; such access is only permitted when there is a direct connection between the proceeding and a holder of relevant transactions (or another statutorily specified individual or entity). (*See id.* ¶ 10.) Neither bank nor trust secrecy requirements have an exception permitting disclosure of confidential information to foreign private entities, counsel, or courts solely based on a foreign legal procedure or request. (*See id.* ¶ 14.) Article 142 sets out sanctions, including fines and imprisonment, for disclosure of information in violation of the provisions of the statute. (*See id.* ¶ 13.) A&M's Mexican counsel opines that granting the Application would allow Petitioners to evade Article 142 by obtaining CIBanco's records and related testimony indirectly and that if A&M Mexico complied with Petitioners' discovery demand, it would violate Article 142 and expose itself to fines and penalties under Mexican law. (*See id.* ¶ 15.)

15

In responding, Petitioners rely on the opinions of an in-house attorney at TRESE who supervises TRESE's involvement in ongoing proceedings concerning its bankruptcy. (*See generally* ECF 38, Second Martinez Del Rio Decl. ¶ 1.) Petitioners respond that Article 142 is "facially inapplicable" to their discovery requests, which seek "documents concerning CIBanco's knowledge of its obligations under the Trust Agreement, its basis for defying the orders of the Mexican bankruptcy court, and any agreements between CIBanco and other entities calling for CIBanco to defy Mexican court orders," rather than the types of banking and trust records covered by the statute; additionally, Petitioners assert that the discovery they seek would be available to TRESE under the statutory exception to disclosure prohibitions for trust beneficiaries, because TRESE is a beneficiary of the Trust. (*See* ECF 37, Pets.' A&M Reply at 12-13.)

Petitioners next contend that A&M raises the specter of violations of Mexican bank and trust secrecy laws without explaining why the documents sought in the Application fall within the scope of Article 142; and Petitioners argue that A&M has provided no evidence to support its unfounded speculation. (*See id.* at 12 (citing *In re Top Matrix Holdings*, 2020 WL 248716, at *6).) Petitioners point out that the Second Circuit has warned courts against "speculative forays into legal territories unfamiliar to federal judges, including attempting to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law." (*Id.* (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995)).) Petitioners urge the Court to reject A&M's speculation that Mexican courts would find the Application to be an effort to circumvent Mexican bank and trust secrecy laws. (*See* ECF 37, Pets.' A&M Reply at 12-13*.*)

16

c. *Analysis*

It is well-established that discovery available under Section 1782 may be broader than that obtainable in foreign courts, and the Second Circuit has instructed courts considering Section 1782 applications not to "consider the discoverability of the evidence in the foreign proceeding." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). As a result, courts often grant petitions under Section 1782 even though the information sought might not have been discoverable in the foreign country. *See In re Fund for Prot. of Inv. Rts. in Foreign States*, 5 F.4th 216, 231 (2d Cir. 2021) (holding that Section 1782 does not have a "foreign-discoverability rule" that would "categorically bar a district court from ordering production of documents where the foreign tribunal or interested person would not be able to obtain the documents if they were located in the foreign jurisdiction"), *reversed on other grounds sub nom. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022); *In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. 2016) (affirming the grant of discovery under Section 1782 even though same discovery might not be obtainable under relevant foreign law); *In re Tiberius Group AG*, 19-MC-0467 (VSB), 2020 WL 1140784, at *4, *9 (S.D.N.Y. Mar. 6, 2020) (affirming a grant of a Section 1782 application over an objection that the discovery sought was beyond what was authorized under the relevant foreign law); *In re BNP Paribas*, 2018 WL 895675, at *3 ("Courts may grant § 1782 applications even where . . . the information sought was not discoverable under the laws of the foreign country at issue in the foreign proceeding.").

Accordingly, courts considering the third *Intel* Factor distinguish between petitions seeking discovery that is broader than the discovery facilitated by the relevant foreign law and discovery that is prohibited. "Only where the materials being sought are privileged or otherwise

17

prohibited from being discovered or used is the third *Intel* factor implicated." *In re Tiberius Grp.*, 2020 WL 1140784, at *4 (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247, 251 (2d Cir. 2019)); *see also Ativos Especiais II*, 2024 WL 4169550, at *13 (explaining that the proper analysis of the third *Intel* Factor "distinguishes between rules of the foreign jurisdiction that prohibit the acquisition or use of certain materials, and rules that merely fail to facilitate investigation of claims").

When a petitioner seeks discovery that would be prohibited under the relevant foreign law, courts typically conclude that the Section 1782 petition is brought to circumvent the foreign restrictions on discovery. *See, e.g., Fed. Republic of Nigeria v. VR Advisory Services, Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) "([C]ircumvention occurs where the applicant uses a § 1782 application to avoid measures that are intended to restrict certain means of gathering or using evidence."). Where foreign law restricts disclosure, "the interests of comity that Section 1782 is intended to serve suggest that the United States court as well should honor those prohibitions and decline to order discovery." *Ativos Especiais II*, 2024 WL 4169550, at *13. Moreover, there is authority for the proposition that, if a court is unclear whether foreign law would prohibit the requested discovery, that lack of clarity cuts against granting a petition. *See In re Hulley Enters., Ltd.,* 358 F. Supp. 3d 331, 352-53 (S.D.N.Y. 2019) (ruling that the "lack of clarity [on an issue of foreign law] favors denying the section 1782 application" because granting the application could require a United States entity with a foreign office "to potentially be directed to act in contravention of that foreign country's law").

A&M submits a declaration from Mexican counsel opining not that Mexican law declines to facilitate the discovery sought in the Application but rather that the requested discovery is

18

prohibited under Mexican law. (*See* ECF 29, Flores Chao Decl. ¶¶ 14-15.) Accordingly, I do not find the cases cited by Petitioners involving discovery that is unavailable under foreign law in the sense of not being facilitated in the foreign forum to be helpful to my analysis of the third *Intel* Factor.

Petitioners also rely on a declaration from Mexican counsel (*see* ECF 38, Second Martinez Del Rio Decl. ¶¶ 6-8) to argue that A&M is incorrect that the discovery sought is prohibited by Article 142, both because the statute is facially inapplicable and because TRESE, as a beneficiary of the Trust, would have access to the documents sought under Mexican law. (*See* ECF 37, Pets.' A&M Reply at 12-13.) However, I cannot conclude, based on my review of the statute and the dueling declarations of Mexican counsel (*compare* ECF 38, Second Martinez Del Rio Decl. *with* ECF 29, Flores Chao Decl.), whether complying with any of Petitioners' discovery requests would violate Mexican law. Moreover, I am mindful of the Second Circuit's admonition to avoid "speculative forays into legal territories unfamiliar to federal judges," *Euromepa*, 51 F.3d at 1099; and I am reluctant to put a foreign subsidiary of a United States company in the untenable position of being ordered to act in a manner that potentially violates foreign law, *see In re Hulley Enters.,* 358 F. Supp. 3d at 352-53. Based on the analysis above, I conclude that the third *Intel* Factor weighs against granting Petitioners' Application as directed to A&M.

4.  The Fourth *Intel* Factor: Whether the
    Discovery Request Is Unduly Intrusive or Burdensome

The fourth *Intel* Factor looks at "whether the request is unduly intrusive or burdensome," *Mangouras*, 980 F.3d at 98, which is measured by the standards of the Federal

Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 302). In this context, the Federal Rules provide that "a subpoenaed party must only produce documents that are in its possession, custody, or control" *In re Boustany*, 23-MC-0203 (LGS), 2024 WL 473569, at *2 (S.D.N.Y. Feb. 7, 2024), and that the "discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case," *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends upon the relevance of the information sought"; in the case of a Section 1782 petition, "relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs.,* 680 F. App'x at 39; *see also Mees*, 793 F.3d at 302; *In re Palladian Partners, LP*, 25-MC-0330 (JLR), 2025 WL 2814719, at *11 (S.D.N.Y. 2025).

In support of the proposition that A&M has possession, custody, or control of the discovery sought, Petitioners argue that A&M "is well positioned to have knowledge concerning CIBanco's unlawful actions" because A&M Mexico was appointed as CIBanco's administrator. (ECF 4, Pets.' Mem. at 13.) Petitioners' Mexican counsel opines that, because A&M Mexico is the bank's administrator, A&M "is likely to have further knowledge of CIBanco's activities in defiance of Mexican court orders" and that the documents sought from A&M are "also likely to be relevant to current and planned Mexican proceedings." (ECF 5, First Martinez del Rio Decl. ¶¶ 24-25.) And Petitioners argue that the discovery sought would not be unduly burdensome for A&M to produce, as the requests are narrowly tailored. (*See* ECF 4, Pets'. Mem. at 25-26.)

A&M responds that the requests are unduly burdensome because (1) Petitioners have not demonstrated that A&M has possession, custody, or control of A&M Mexico's documents and information and (2) the specific discovery requests "are astoundingly overbroad and can

only be described as a tremendously invasive fishing expedition." (ECF 32, A&M Opp. at 5, 12-16, 24.) As to the first point, A&M avers that it is a separate corporate entity from A&M Mexico, that A&M staff have not participated in the CIBanco engagement, and that A&M does not have any documents relating to the CIBanco engagement. (*See* ECF 30, Meneses Decl. ¶¶ 3, 9-10; ECF 31, Feigenbaum Decl. ¶¶ 3-5.) As to the second point, A&M takes the position that Petitioners have not demonstrated and cannot demonstrate that the discovery requests are proportional to the needs of the Foreign Proceedings. (*See* ECF 32, A&M Opp. at 24-26.)

Petitioners counter that A&M has failed to supply the "particularized evidence" necessary to support a claim of undue burden. (*See* ECF 37, Pets.' A&M Reply at 14 (citing *In Re Bloomfield Investment Resources Corp.,* 315 F.R.D. 165, 168 (S.D.N.Y. 2016)).) Furthermore, Petitioners assert that the discovery requests are proportional to the needs of the Foreign Proceedings because "CIBanco's misconduct has taken place for a period over ten years and . . . resulted in the misappropriation of approximately $120 million in funds from the trust." (*See* ECF 37, Pets.' A&M Reply at 14 (citing ECF 38, Second Martinez Del Rio Decl. ¶ 8.)) To the extent that the discovery requests are overbroad, Petitioners request that the Court authorize a more limited discovery request or direct the parties to reach an agreement on the limitations following issuance of the prospective subpoena. (*See* ECF 37, Pets.' A&M Reply at 15.)

### a. *Possession, Custody, or Control of the Requested Discovery*

A&M is correct that a petitioner's failure to show that the respondent has possession, custody, or control of the requested discovery is fatal to a Section 1782 petition. *See In re Boustany*, 2024 WL 473569, at *2 (explaining that the "party seeking discovery has the burden of showing that the other party has control over the materials sought and, if they fail to do so,

21

the court's § 1782 analysis need go no further"); *In re FourWorld Event Opportunities Fund LP*, No. 22-MC-0330 (JPO), 2023 WL 3375140, at *3 (S.D.N.Y. May 11, 2023) (denying a Section 1782 application for failure to show that the respondent had custody or control of requested documents). "Courts in this District routinely deny § 1782 applications . . . where applicants fail to demonstrate the requisite degree of control." *Anguila Energia e Particpacoes Ltda. v. JPMorgan Chase & Co.*, No. 22-MC-0228 (JGK) (SLC), 2024 WL 3650347, at *8 (S.D.N.Y. Feb. 29, 2024) ("*Anguila Energia*") (citing cases), *report and recommendation adopted*, 2024 WL 3373416 (S.D.N.Y. July 10, 2024), *aff'd,* 2025 WL 1661987 (2d Cir. June 12, 2025). A party seeking discovery may not rely on conjecture to demonstrate that the entity from which discovery is sought has possession, custody, or control of the materials in question. *See In re Boustany*, 2024 WL 473569, at 2.

A corporate parent is not automatically deemed to have possession, custody, or control its subsidiary's documents and information. *See Anguila Energia,* 2024 WL 3650347, at *9 (holding that a Section 1782 application should be denied where the petitioner failed to demonstrate that the respondent has possession, custody, or control over documents that would be responsive to the subpoena); *In re FourWorld Event Opportunities Fund*, 2023 WL 3375140, at *2 (same); *In re Liverpool Ltd. P'ship*, No. 21-MC-0392 (AJN), 2021 WL 5605044, at *3 (S.D.N.Y. Nov. 24, 2021) (same). Courts in this District have identified as indicia that a company has possession, custody, or control of the documents and information of a corporate affiliate that "documents ordinarily flow freely between [the] two affiliated entities," *In re Boustany*, 2024 WL 473569, at *2, and that the affiliates share operational functions, such as compliance, risk management, or financial reporting responsibilities, as well as common

22

employees or facilities, *see Anguila Energia*, 2024 WL 3650347, at *4. In one case, the Second Circuit found that discovery under Section 1782 was not appropriate even though a parent company and its subsidiary shared a document server, because permitting discovery based on the common server "would effectively collapse corporate separations and incentivize companies to maintain segregated computer systems." *See Banoka S.à.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 70 (2d Cir. 2025).

Petitioners have failed to show that A&M has possession, custody, or control of the discovery they seek – CIBanco documents and information held by A&M Mexico as a result of its role as the bank's administrator. Petitioners have offered no evidence that documents ordinarily flow between A&M and A&M Mexico; or that A&M and A&M Mexico share operational functions, employees, or facilities. Relying on their Mexican counsel's declarations, Petitioners argue that A&M "is well positioned to have knowledge" – and therefore documents – "concerning CIBanco's unlawful actions" because A&M Mexico was appointed CIBanco's administrator. (ECF 4, Pets.' Mem. at 13.) But Petitioners' Mexican counsel has no personal knowledge of what materials are available to A&M, and he merely speculates on the information and documents that A&M "is likely to have." (ECF 5, First Martinez del Rio Decl. ¶¶ 24-25.) This conjecture is insufficient to demonstrate that A&M has possession, custody, or control of the discovery sought. *See In re Boustany*, 2024 WL 473569, at 2.

### b. Breadth and Burden of the Discovery Requests

Rule 26 requires that "discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case," *Correios*, 2022 WL 4955312, at *8. Petitioners' discovery requests, which seek testimony and all documents from

2015 to the present relating to the role played by CIBanco in connection with the Trust

Agreement (*see* ECF 1, Application ¶ 4 & Exh. B) are undoubtedly expansive. Petitioners explain

the relevance (*see* ECF 4, Pets.' Mem. at 25-26) – which A&M does not appear to dispute. But

Petitioners have provided no basis to conclude that the broad discovery they seek is

proportional to the needs of the Foreign Proceedings. As such, the document requests are

overly broad and unduly burdensome. *See Banoka*, 148 F.4th at 69 (stating that there was "no

doubt" that the document requests were too "expansive" where they "compris[ed] 14

expansive categories, most of which [sought] all documents and communications related to

various issues without limitation" and "encompassed virtually any documents possessed by the

[subpoena recipients]" relating to the subject of the litigation).

The requested testimony is similarly unduly burdensome, because A&M has proffered

evidence that its employees, "as opposed to the employees of their [foreign]-based

counterpart," A&M Mexico, "were not directly involved" in CIBanco's administration, and that

no New York employees of A&M have substantive knowledge of the CIBanco engagement. (ECF

30, Meneses Decl. ¶¶ 9-10; ECF 31, Feigenbaum Decl. ¶ 5.) On similar facts, the Second Circuit

in *Banoka* held that "extraterritorial discovery" (ordering the respondent to provide testimony

from foreign-based witnesses) was not warranted. *See Banoka*, 148 F.4th at 69 (affirming denial

of a petition under Section 1782 seeking depositions where the only knowledgeable individuals

were employees of the U.S.-respondent's foreign affiliate).

The burden of the discovery requests is exacerbated because compliance could subject

A&M Mexico to potential sanctions for violating Mexican bank and trust secrecy laws. *See In re*

*Okean B.V. and Logistic Sol. Int'l*, 60 F. Supp. 3d 419, 432 (S.D.N.Y. 2014) (denying Section 1782

relief in part because compliance with the document demand would subject the subpoenaed party to "potential sanctions for breaching the foreign laws preventing . . . disclosure").

\*\*\*

I conclude that the first, third, and fourth *Intel* Factors cut against granting the Application, while the second *Intel* Factor favors granting the Application, and that on balance, the *Intel* Factors disfavor granting the Application. However, I am mindful of the Second Circuit's instruction that, in exercising its discretion, a district court should consider "the twin aims of [§ 1782]: [(1)] providing efficient means of assistance to participants in international litigation . . . and [(2)] encouraging foreign countries to provide similar means of assistance to our courts." *Mees,* 793 F.3d at 297-98. Accordingly, I respectfully recommend that Your Honor should permit Petitioners an opportunity to file a renewed Application seeking discovery from A&M that addresses to the extent possible the deficiencies set out in this report and recommendation.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Application seeking discovery from A&M be DENIED without prejudice to Petitioners' filing a renewed application that addresses to the extent possible the deficiencies identified herein.

DATED:    January 28, 2026
          New York, New York

Respectfully Submitted,

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Oetken.

**THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).