UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TECNOLOGIAS RELACIONADAS con ENERGIA y SERVICIOS ESPECIALIZADOS, S.A. De C.V., et al., Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 To Take Discovery for Use in Foreign Proceedings. | NO. 25-MC-0435 (JPO) (RFT) <br><br> **<u>AMENDED REPORT & RECOMMENDATION</u>** |

**TO THE HONORABLE J. PAUL OETKEN, UNITED STATES DISTRICT JUDGE:**

On October 1, 2025, Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V. ("TRESE") and its bankruptcy trustee, Grupo Empresarial Anacar, S.A. de C.V. ("Anacar"), (together, "Petitioners") submitted an ex parte Application (the "Application") pursuant to 28 U.S.C. § 1782 for an order authorizing Petitioners to serve subpoenas on United Overseas Bank New York Agency ("UOB-NYA"), The Bank of New York Mellon Corp. ("BNYM"), and Alvarez & Marsal Holdings, LLC ("A&M") (together, Respondents) to obtain discovery for use in in ongoing foreign bankruptcy proceedings and related proceedings in the Seventh District Court of Civil Matters in Mexico City, Mexico and other Mexican courts (together, the "Foreign Proceedings"). (*See* ECF 1, Application ¶ 1.)[1] This report and recommendation addresses only the Application as it pertains to issuance of subpoenas seeking discovery of BNYM. Having reviewed Petitioners' and BNYM's submissions, for the reasons set forth below, I respectfully recommend that the Application be GRANTED, with the proposed subpoenas to

---

[1]    Unless otherwise indicated, this report and recommendation omits internal quotation marks, alterations, and citations from quoted text.

BNYM revised as set forth herein;[2] to the extent that, upon undertaking the document

production, BNYM concludes that compliance would be overly burdensome, it may come back

to the Court after engaging in a meet-and-confer process with Petitioners.

**BACKGROUND**

**I.      Factual Background**

TRESE is a Mexican company that provides energy-related services, including services

related to oil drilling. It is one of four Mexican companies that make up a consortium

("Consortium") to which PEMEX, the Mexican state-owned oil and gas corporation, awarded a

contract in 2013 to obtain, install, and operate a jack-up oil-drilling-services platform in the Gulf

of Mexico ("Service Contract"). To fulfill its obligations under the Service Contract, the

Consortium entered into an agreement with Coastal Energy Solutions Pte. Ltd. ("Coastal"), a

subsidiary of Coastal Contracts BHD, which is a company incorporated under the laws of

Malaysia. Coastal purchased and provided a platform for use on the project and obtained a

---

[2]      "Until recently, the consensus view in this District was that rulings on § 1782 applications are not dispositive, and therefore that such an application could be disposed by order of the Magistrate Judge to whom it was referred . . . ." *In re Libyan Asset Recovery and Mgmt. Office*, No. 21-MC-0852 (JGK) (BCM), 2023 WL 8445811, at *1 n.1 (S.D.N.Y. Nov. 16, 2023) (quoting *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)). However, in *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-2865, 2023 WL 3166357 (2d Cir. Mar. 28, 2023), a panel of the Second Circuit decided that it lacked jurisdiction to review the order issued by a Magistrate Judge denying an application under Section 1782 and remanded so that the order could be "treated as a report and recommendation." 2023 WL 3166357, at *1. While the Second Circuit did not explain its reasoning, the theory would be that the entire purpose of a Section 1782 petition is to seek discovery, so that any decision regarding whether discovery may proceed is dispositive. I therefore make a report and recommendation on the Application rather than issuing an opinion and order.

$130 million line of credit from Singapore-based United Overseas Bank ("UOB") to finance the project. (*See* ECF 1, Application ¶ 3.)

In September 2015, the Consortium, UOB, and Coastal entered into an irrevocable trust agreement, No. CIB/2346 ("Trust Agreement") to manage all payments from PEMEX under the Service Contract; the Trust Agreement established a trust (the "Trust"), which is administered by a Mexican banking organization, CIBanco S.A., Institución de Banca Multiple ("CIBanco"). (*See id.* ¶ 4.)

As relevant here, the Foreign Proceedings involve questions about the disposition of funds owed to TRESE and its creditors that have been withheld, allegedly in violation of orders issued by  Mexican courts. In particular, the Foreign Proceedings involve ongoing disputes related to CIBanco's improper administration of the Trust, its failure to remit funds to as required by the Trust Agreement, and the unlawful diversion of funds owed to TRESE to other entities, including UOB. (*See id.* ¶ 5.) TRESE is a party to the Foreign Proceedings, including bankruptcy proceedings and over 90 pending amparo actions, which are actions brought in Mexican federal courts in the first instance and are "the means to review and annul unconstitutional judicial decisions" under Mexican law, including actions taken by bankruptcy judges. *In re Ord. Seeking Discovery Under 28 U.S.C. § 1782*, No. 24-MC-152 (GHW) (GS), 2024 WL 3569022, at *4 (S.D.N.Y. July 12, 2024) (citing cases), *report and recommendation adopted*, 2024 WL 3567846 (S.D.N.Y. July 29, 2024). (*See also* ECF 1, Application ¶ 6.) TRESE will be a party to other anticipated civil and criminal proceedings. (*See* ECF 1, Application ¶ 6.) Anacar is TRESE's bankruptcy trustee and represents TRESE in the Foreign Proceedings. (*See id.*)

Petitioners allege that a group of individuals and entities conspired to misappropriate funds paid by PEMEX that were due to TRESE, and to unlawfully transfer those funds to UOB and to other as-yet unknown entities. This misconduct is the subject of multiple Foreign Proceedings and caused TRESE's bankruptcy and the appointment of Anacar as bankruptcy trustee; continuing unlawful transfers have hindered TRESE from repaying its creditors as required by Mexican law. (*See* ECF 1, Application ¶ 8.)

## II.    Procedural History

On October 1, 2025, Petitioners submitted their Application under 28 U.S.C. § 1782 for an order authorizing them to serve a subpoena on each Respondent to obtain discovery for use in the Foreign Proceedings. (*See* ECF 1, Application; ECF 4, Pets.' Mem.; ECF 5, First Declaration of Manuel Gomez Morin Martinez Del Rio ("First Gomez Morin Decl.").) On October 21, 2025, the Honorable Jennifer H. Readen referred this matter to me for general pretrial supervision and dispositive motions. (*See* ECF 6, Order of Ref.) The case was reassigned from Judge Rearden to Your Honor on December 3, 2025.

On October 22, 2025, I ordered Petitioners to serve their Application on Respondents and set deadlines for Respondents' responses to the Application, if any, and for Petitioners' reply or replies, if any. (*See* ECF 7, Order.) On October 30, 2025, Petitioners moved for reconsideration of my order, arguing that applications under Section 1782 are generally handled ex parte and that there is time pressure militating in favor of not requiring them to serve Respondents. (*See* ECF 8.) The next day, I denied the motion for reconsideration, explaining that my experience has been that requiring service in Section 1782 cases expedites resolution. (*See* ECF 9.)

On December 10, 2025, after being granted an extension of time (ECF 28), BNYM filed a response in opposition to the Application. (*See* ECF 36, BNYM's Opp.) On December 15, 2025, Petitioners filed their reply in further support of the Application seeking discovery of BNYM. (*See* ECF 39, Pets.' BNYM Reply.)

**III.    The Application**

Petitioners seek discovery – documents and depositions – from BNYM in connection with the Foreign Proceedings, as described in detail below. (*See* ECF 4, Pets.' Mem. at 10.) Petitioners seek (i) bank records, financial records, and testimony relating to specific accounts that, according to Petitioners, will be relevant to showing that Coastal and CIBanco violated their obligations under the Trust Agreement by seizing control of distributions from the Trust and violated the local bankruptcy court's orders by refusing to make payments to TRESE, and (ii) documents concerning accounts and transactions related to the Trust Agreement relevant to the opening and operation of accounts held at BNYM, including without limitation, communications with the account holders, which would assist with identifying relevant misconduct. (*See id.* at 10-12.)

BNYM relies on A&M's position that the Application is an attempt to circumvent foreign discovery prohibitions (*see* ECF 32, A&M's Opp. at 19-23) to argue that the Court should stay the Application as to BNYM until this issue is resolved in connection with A&M's opposition to the Application as directed at A&M. (*See* ECF 36, BNYM's Opp. at 6.) BNYM also argues that there is no evidence it had "any connection to the events at issue in any way other than as an alleged conduit for funds," and that as a result, the Court should deny the Application as unduly burdensome. (*Id.* at 5-6 (citing Fed. R. Civ. P. 45 and *Intel Corp. v. Advanced Micro Devices, Inc.*,

5

542 U.S. 241, 264-65 (2004)).) In the alternative, BNYM asks that the proposed subpoena should be narrowed so that BNYM is not required to provide either deposition testimony or any documents other than financial records. (*See id*.) I issued a report and recommendation on January 12, 2026 (ECF 41), to which BNYM objected (ECF 44); I construed the objections as a request for reconsideration, which I granted and withdrew the original report and recommendation. (ECF 47.) This amended report and recommendation replaces the withdrawn report and recommendation, and makes the revisions described in my order at ECF 47.

## DISCUSSION

### I.    Legal Standard

Under 28 U.S.C. § 1782(a), a federal district court may order any person who "resides or is found" in the district "to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." Under the statute, the party making the application must show that: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *In re Guo*, 965 F.3d 96, 102 (2d Cir. 2020) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

When the statutory requirements are met, a court is "free to grant discovery in its discretion." *In re Optimal Inv. Servs., S.A.,* 773 F.3d 456, 460 (2d Cir. 2014). Although that discretion is broad, it "must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and

6

encouraging foreign countries by example to provide similar means of assistance to our courts." *Mangouras v. Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

The Supreme Court has identified four discretionary factors (the "*Intel* Factors") that a court considers when ruling on a Section 1782 application: "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for § 1782(a) aid generally is not as apparent; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome." *Id*. at 97-98 (citing *Mees*, 793 F.3d at 298 and *Intel*, 542 U.S. at 264-65).

The fourth *Intel* Factor – whether the request is "unduly intrusive or burdensome" – is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, No. 15-MC-0205 (LGS), 2017 WL 6343689, at *4 (S.D.N.Y. Dec. 11, 2017) (citing *Mees*, 793 F.3d at 302). As applied to Section 1782 applications, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Associacão dos Profissionais dos Correios v. Bank of N.Y. Mellon Corp.*, No. 22-MC-0132 (RA) (KHP) ("*Correios*"), 2022 WL 4955312, at *8 (S.D.N.Y. Oct. 4, 2022), *remanded on other grounds*, 2023 WL 3166357 (2d Cir. Mar. 28, 2023). The "proportionality analysis depends upon the relevance of the information sought – and, in the case of a § 1782 petition, relevance is assessed with regard to

the foreign proceeding." *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017).

The Second Circuit has instructed that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Mees*, 793 F.3d at 302. Thus, where a court finds that discovery sought under Section 1782 is overbroad, "before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." *Id.*; *see also In re Fed. Republic of Nigeria*, No. 21-MC-0007 (JGK) (VF), 2022 WL 4234556, at *6 (S.D.N.Y. Sept. 14, 2022).

II.     **Analysis**

A.      The Statutory Requirements

Petitioners argue that they have met the Section 1782 statutory requirements. (*See* ECF 4, Pets.' Mem. at 5, 15-20.)  BNYM does not challenge the conclusion that Petitioners have met the statutory requirements. For the reasons set forth below, I agree with Petitioners that the statutory requirements are met.

1.  Found in this District

BNYM is a U.S. financial services institution that regularly transacts business in this district and maintains its headquarters at 240 Greenwich Street, New York, New York. (*See id.* at 16.)  Thus, BNYM resides in the Southern District of New York for purposes of Section 1782 and the first statutory requirement is satisfied. *See Daimler AG v. Bauman,* 571 U.S. 117, 137 (2014) ("[T]he place of incorporation and principal place of business are paradigm . . . bases for general jurisdiction."); *In re Del Valle Ruiz*, 342 F. Supp. 3d 448, 459 (S.D.N.Y. 2018) (holding that a

8

corporation that maintained its principal place of business within the district satisfied the statutory "resides or is found" within district requirement for discovery order), *aff'd*, 939 F.3d 520 (2d Cir. 2019). BNYM does not challenge this conclusion.

2. The Discovery Sought Is for Use in a Foreign Proceeding

Petitioners state that it seeks the contemplated discovery for use in the Foreign Proceedings. (*See* ECF 4, Pets.' Mem. at 18.) Petitioners argue that the Foreign Proceedings are the types of proceedings contemplated by Section 1782 and that the discovery sought is relevant to those actions. (*See id.* (citing *In re Ord. Seeking Discovery Under 28 U.S.C. § 1782*, 2024 WL 3569022, at *5)).

a. There Are Qualifying Foreign Proceedings

In analyzing whether discovery being sought under Section 1782 is "for use in a proceeding before a foreign tribunal," courts look to whether "there actually is a foreign proceeding," *Jiangsu S.S. Co., Ltd. v. Success Superior Ltd.*, No. 14-CV-9997 (CM), 2015 WL 3439220, at *4 (S.D.N.Y Feb 5, 2015) (citing *Intel*, 542 U.S. 241 at 259), as well as "whether [the] foreign proceeding is adjudicative in nature." *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). There actually is a foreign proceeding if a foreign proceeding is pending or "reasonably contemplated." *Jiangsu S.S.,* 2015 WL 3439220, at *4 (citing *Intel*, 542 U.S. 241 at 258-59). Here, many of the Foreign Proceedings are currently pending (*see* ECF 4, Pets.' Mem. at 9), which satisfies the first requirement. BNYM does not contest this factor.

Nor does BNYM contest that the Foreign Proceedings are adjudicative in nature. (*See generally* ECF36, BNYM's Opp.) The Foreign Proceedings are adjudicative in nature, in that they ask Mexican courts to, among other acts, determine the disposition of funds owed to TRESE

9

and its creditors that have been withheld, allegedly in violation of orders issued by Mexican courts, and resolve ongoing disputes related to CIBanco's alleged improper administration of the Trust, failure to remit funds to TRESE as required by the Trust Agreement, and unlawful diversion of funds owed to TRESE to other entities, including UOB. (*See* ECF 4, Pets.' Mem. at 8-9, 14.)  Accordingly, the Foreign Proceedings qualify as foreign proceedings for purposes of Section 1782.

### b.  Discovery "for Use" in a Foreign Proceeding

The statutory for use factor requires a showing that the requested discovery is "relevant to the subject matter of the [foreign] proceeding, and the evidence would increase the applicant's chances of success in the proceeding." *In re Asia Mar. Pac., Ltd.*, 253 F. Supp. 3d 701, 706 (S.D.N.Y. 2015) (quoting *Mees*, 793 F.3d at 299). Rule 26(b) of the Federal Rules of Civil Procedure requires that information sought through discovery be relevant to a claim or defense. Thus, an applicant's discovery requests should be "tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Athene Holding Ltd. v. Dang*, No. 23-MC-0171 (JHR) (SLC), 2023 WL 5348950, at *3 (S.D.N.Y. Aug. 21, 2023). Additionally, however, as explained by the Second Circuit, because Congress "adopt[ed] the phrase for use," it "plainly meant to require that § 1782 applicants show that the evidence sought is something that will be employed with some advantage or serve some use in the proceeding." *Certain Funds, Accts. and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015). As a result, courts addressing requests for discovery under Section 1782 must determine whether the applicant "will actually be able to use the information in the proceeding." *Id*. BNYM does not dispute the for use factor. Accordingly, I conclude that the

10

discovery sought of BNYM is for use in the Foreign Proceedings.

### 3.   The Application Is Brought by an Interested Party

The Application is brought by Petitioners, which currently are interested parties in the

pending Foreign Proceedings: TRESE is debtor in Mexican bankruptcy proceedings, and Anacar,

TRESE's trustee, is bringing the amparo actions. (*See* ECF 4, Pets.' Mem. at 15.) BNYM does not

contest that Petitioners meets this requirement. Under the circumstances, Petitioners have

established that they are interested parties for the purposes of Section 1782. *See In re Esses,*

101 F.3d 873, 875 (2d. Cir. 1996) (holding that parties to foreign proceedings are necessarily

interested persons under the plain language of Section 1782)*; In re Hellard,* No. 21-MC-0864

(GHW) (KHP), 2022 WL 2819408, at *3 (S.D.N.Y. July 19, 2022) (authorizing foreign bankruptcy

trustees to use Section 1782 to obtain discovery); *In re Ord. Seeking Discovery Under 28 U.S.C. §*

*1782*, 2024 WL 3569022, at *4 (finding that parties to amparo actions qualify as interested

persons under Section 1782).

***

Having been persuaded that the Application meets the statutory requirements of

Section 1782 with respect to BNYM, I turn to the discretionary factors set forth in *Intel*.

### B.        The *Intel* Discretionary Factors

Petitioners argues that each of the four *Intel* Factors weighs in favor of granting the

discovery requested by the proposed subpoenas to BNYM: (1) Respondents are not parties to

the Foreign Proceedings; (2) there is no indication that courts overseeing the Foreign

Proceedings would reject the requested discovery; (3) the Application does not reflect an effort

to circumvent foreign restrictions on discovery; and (4) the Application is narrowly tailored to

11

include only relevant and readily identifiable information and documents and avoid any undue burden on BNYM. (*See* ECF 4, Pets.' Mem. at 20-26.)  BNYM takes the position that the discovery sought is unduly intrusive and burdensome. (*See* ECF 36, BNYM's Opp. at 5.)

For the reasons set forth below, I agree with Petitioners that the discretionary *Intel* Factors, on balance, favor granting the Application to issue subpoenas to BNYM.

1. The First *Intel* Factor: Whether the Entity from Which Discovery Is Sought Is a Participant in the Foreign Proceeding

The first *Intel* Factor examines whether "the person [or entity] from whom discovery is sought is a participant in the foreign proceeding, in which case the need for Section 1782(a) aid generally is not as apparent." *Mangouras*, 980 F.3d at 97. BNYM does not argue that it is a participant in any of the Foreign Proceedings. Accordingly, I conclude that this factor supports granting the requested discovery.

2. The Second *Intel* Factor: Receptivity of the Foreign Forum to Judicial Assistance

The second *Intel* Factor concerns "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Mangouras*, 980 F.3d at 97-98. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance[,]" and a court "should deny discovery on the basis of lack of receptiveness only where it is provided with authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176-77 (S.D.N.Y. 2020) (quoting *Euromepa*, 51 F.3d at 1100); *see also In re Safra*, No 21-MC-0640

12

(GHW) (JLC), 2022 WL 3584541, at *5 (S.D.N.Y. Aug. 22, 2022) (noting that "objection to U.S. federal-court judicial assistance would have to come from an official source, such as an agent of the [foreign] government"); *Schmitz,* 376 F.3d at 84 (denying the discovery request where the German Ministry of Justice and local German prosecutor asked the district court to do so).

Petitioners argue that this factor cuts in their favor because Mexican counsel states that the use of Section 1782 to obtain discovery is not prohibited or discouraged in Mexico. (*See* ECF 5, First Gomez Morin Decl.  Decl. ¶¶ 29-30.) BNYM does not argue to the contrary. (*See generally* ECF 36, BNYM's Opp.) I therefore conclude that this factor supports granting the Application.

3.   The Third *Intel* Factor: Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* Factor asks "whether the . . . request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," *Mangouras*, 980 F.3d at 98, which occurs if the application is an attempt to evade discovery procedures in the foreign jurisdiction, or if the application is otherwise a "bad faith endeavor to misuse Section 1782." *In re Bouka*, 637 F. Supp. 3d 74, 90 (S.D.N.Y. 2022); *see also In re Hansainvest Hanseatische Inv.-GmbH,* 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) (holding that the third *Intel* Factor weighed in the applicant's favor because "the Court is not persuaded that Applicants have engaged in any improper or bad faith evasion of German procedures").

BNYM, relying on A&M's position that the Application is an attempt to circumvent foreign discovery prohibitions (*see* ECF 32, A&M's Opp. at 19-23), argues that the Court should stay the Application as to BNYM until this issue is resolved in connection with A&M's opposition to the Application. (*See* ECF 36, BNYM's Opp. at 6.) Petitioners counter that A&M's argument –

13

that requests for Mexican banking records reflect an effort to do an end-run around Mexican bank privacy laws – is based on a statute, Article 142 of the Mexican Credit Institutions Law, that governs privacy obligations of Mexican but not United States banks. (*See* ECF 39, Pets.' BNYM Reply at 9.) I agree with Petitioners that BNYM is differently situated from A&M on this issue, because the Application seeks documents that are alleged to be in A&M's possession, custody, or control because an A&M subsidiary was an agent of a Mexican bank (*see* ECF 1, Application ¶ 10 ); by contrast, the Application seeks documents that came into in BNYM's possession, custody, or control in the regular course of its operations as a United States bank doing business in New York. (*See* ECF 1, Application ¶¶ 8-9.) Whether or not the Application seeks documents from A&M in circumvention of foreign discovery rules – a question that I will address in connection with the Application as directed to A&M – I have seen no indication that Mexican law precludes the production of bank records from a United States bank located in New York, and so I decline to stay the Application as to BNYM.

4.  The Fourth *Intel* Factor: Whether the
    Discovery Request Is Unduly Intrusive or Burdensome

The fourth *Intel* Factor looks at "whether the request is unduly intrusive or burdensome," *Mangouras*, 980 F.3d at 98, which is measured by the standards of Rule 26 of the Federal Rules of Civil Procedure. *See In re XPO Logistics, Inc.*, 2017 WL 6343689, at *4 (citing *Mees,* 793 F.3d at 302). In this context, Rule 26 "contemplate[s] that discovery requests be tailored to seek information relevant to the parties' claims and defenses and proportional to the needs of the case." *Correios*, 2022 WL 4955312, at *8. The "proportionality analysis depends upon the relevance of the information sought"; in the case of a Section 1782 petition,

14

"relevance is assessed with regard to the foreign proceeding." *In re Catalyst Managerial Servs.,* 680 F. App'x at 39. Petitioners argues that the discovery sought would not be unduly burdensome for BNYM to produce, as the requests are narrowly tailored. (*See* ECF 4, Pets.' Mem. at 12, 25-26.)

BNYM asserts that it has financial records for only seven of the accounts identified by Petitioners, and that requiring it – a non-party – to produce documents relating to communications with non-BNYM account holders would be unduly burdensome. (*See* ECF 36, BNYM's Opp. at 5-6.) Petitioners counter that because the Foreign Proceedings involve high stakes and because BNYM has not disputed the relevance of the documents requested or supported its conclusory contention that production would be unduly burdensome, there is no basis for the Court to limit the proposed subpoenas to BNYM. (*See* ECF 39, Pets.' BNYM Reply at 5-7.) However, Petitioners do limit the scope of the information sought in the proposed subpoenas to BNYM to documents, including account opening documents and communications with non-BNYM account holders, relating to the seven accounts for which BNYM has financial records. (*See id.*)

As Petitioners note, "Section 1782 expressly contemplates that non-parties will produce documents." (*Id.* (citing *In re Pidwell,* No. 21-MC-0166 (ALC) (KHP), 2022 WL 192987, at *6 (S.D.N.Y. Jan. 21, 2022).) Petitioners likewise are correct that that they have shown that the requested discovery is relevant and that the litigation stakes are high (*see* ECF 39, Pets.' BNYM Reply at 2-4), which means that any arguments by BNYM that complying with the proposed subpoenas would be time-consuming or expensive are unlikely to carry the day. *See, e.g., In re BM Brazil*, 2024 WL 555780, at *17 (noting that the assertion that production would require a

"labor-intensive search of thousands of documents, some of which may have to be redacted" was not sufficient to demonstrate undue burden in a high-stakes commercial litigation); *In re Valitus, Ltd.*, No. 20-MC-91133 (FDS), 2020 WL 6395591, at *9 (D. Mass. Nov. 2, 2020) (holding that compliance with the subpoena would not be unduly burdensome for a respondent that "operate[d] a highly sophisticated worldwide enterprise"). This is particularly the case where, as here, the party resisting discovery has not made any concrete showing of burden. *See, e.g., Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (emphasizing that where discovery is relevant, the party seeking non-disclosure must demonstrate good cause); *In re YS GM Marfin II LLC*, No. 20-MC-182 (PGG), 2022 WL 624291, at * 11 (S.D.N.Y. Mar. 2, 2022) (ordering discovery under Section 1782 when respondents "never submitted anything to substantiate their alleged burden or any estimate of their costs and [ ] failed to provide Applicants with any results of any searches for responsive documents"). Courts in this District routinely require banks such as BNYM to produce communications under Section 1782. *See, e.g., In re JSC BTA Bank,* 577 F. Supp. 3d 262, 268 (S.D.N.Y. 2021) (granting Section 1782 application for discovery against 13 banks)*; In re Maksoud,* No. 25-CV-4188 (AKH) 2025 WL 2444130, at *2 (S.D.N.Y. Aug. 25, 2025) (granting Section 1782 application for an order authorizing petitioner to subpoena multiple banks in connection with a pending proceeding in Brazil). I therefore conclude that this *Intel* Factor supports allowing discovery of documents, including financial records and communications, relating to the seven non-BNYM accounts for which BNYM has financial records.

***

16

The four *Intel* Factors cut in favor of granting the Application as to BNYM. Accordingly, I respectfully recommend that Your Honor should permit issuance of the proposed subpoenas to BNYM, as limited to documents relating to the seven accounts for which BNYM has identified financial records, including communications with the non-BNYM account holders. If Your Honor accepts this recommendation, and BNYM finds in the course of responding to the subpoenas that the burdens are undue, based on a high number of documents responsive to a particular request that need to be reviewed or any other reason, BNYM may seek relief from the Court if necessary after meeting and conferring with Petitioners.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that the Application be GRANTED and that Petitioners be authorized to serve on BNYM subpoenas that are modified as described herein.

DATED:    February 9, 2026
          New York, New York

Respectfully Submitted,

_____
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**

17

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO REPORT AND RECOMMENDATION**

The parties shall have fourteen days (including weekends and holidays) from service of this report and recommendation to file written objections to this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections or responses to objections must be addressed to Judge Oetken.

**THE FAILURE TO OBJECT WITHIN FOURTEEN DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).